IN THE MATTER OF THE PETITION OF THOMAS R. SEWALL *v.* LAWRENCE BRAINERD, JOSEPH CLARK, AND J. G. SMITH, *Receivers of the Vermont Central Railroad Company and the Vermont and Canada Railroad Company, and*

IN THE MATTER OF THE PETITION OF JAMES HUNNEWELL, SILAS PIERCE AND HENRY HOMER *v.* THE SAME.

[IN CHANCERY.]

*Railroads.   Bonds.   Coupons.   Payment.   Parties.   Estoppel.   Costs. Chancery.*

The Vermont and Canada Railroad Company leased its road to the Vermont Central Railroad Company for a certain rent upon certain conditions, securing the payment thereof.  The latter road then issued bonds to a large amount, with interest payable semi-annually, upon presentation of coupons attached to the bonds, and secured the bonds by a mortgage to trustees of its railroad franchise and property.  Subsequently the former road brought a bill in chancery against the latter road, the trustees and some of the bondholders, to secure their lien, claiming possession of both roads for non-payment of rent,  The trustees were appointed receivers under directions to hold possession and operate both roads, &c., and before final decree of the court the former road and the great body of the first mortgage bondholders entered into an agreement of compromise embracing all matters of controversy.  By an act of the legislature the arrangement was made binding and a petition brought to the court of chancery, and a decree obtained in pursuance of the agreement, by consent of both railroad companies and the bondholders.  The decree provided among other things that the trustees and receivers should pay for a certain extension of the Vermont and Canada road, to an amount not exceeding $250,000., and as often as $70,000. should be so expended, said company should issue shares of its capital stock to said trustees and receivers at par, to be rateably distributed by them among said bondholders in liquidation of their respective claims as such.  After providing

In re Sewall *v.* Brainerd et al., and in re Hunnewell et al. *v.* Same.

for other payments, including said rent, the decree provides for the application of the net income in full payment of the "securities called first mortgage bonds," &c. The receivers having given public notice that they were ready to pay three and one-half *per cent.* of the first mortgage bonds, which is the first $70,000. in Vermont and Canada railroad company stock mentioned in the decree, and having refused to pay the same to the holders of the coupons which had been severed from said bonds by the bondholders and sold, said coupon holders petitioned the chancellor, who made the decree, to direct the receivers to make the payment to them under the decree, or if necessary, so modify the decree as to give them the dividend. *Held,* that the decree does not decide to which class this payment shall be made, but if it did, since no such question was presented to the chancellor, he may modify his decree on this petition.

*Held,* also, that the coupon holders have the right in equity, to have the payment made to them, and in the order in which the coupons fall due; that whether negotiable or not separate from the bonds, so as to enable the holder to maintain an action at law, they are when matured a constituent part of the mortgage debt, and an assignment of them carries with it by implication an interest in the mortgage security.

Though the bond is to pay A. B. or bearer "with interest at the rate of seven *per cent. per annum,* payable semi-annually on presentation of the interest coupons hereto attached," yet it is *held,* that as the coupons are made payable to bearer, and as the coupon only is required to be presented when paid, it is more reasonable to suppose the intention was to pay the *coupon* to the holder of the *coupon* in case it should be severed and sold without the bond.

It cannot be claimed as decisive in favor of the coupon holders that if the coupons were held by the bond holders the payment would be applied first in payment of the coupons, because where a part of a mortgage debt has been assigned, and the mortgage security is about to be all appropriated to pay the debt, and is insufficient to pay the whole it is usually distributed *pro rata.*

If this were a final distribution of the proceeds of the whole mortgage property, a *pro rata* distribution would probably be the rule.

Only such parties need be made parties in this petition as would be affected by a granting of the petition, though they do not comprise all the parties of the decree.

The petitioners are not estopped from claiming the relief sought, on the ground that public notice was given by advertisement in a newspaper, to all persons in interest, of the proceedings and hearing when the decree was entered, and that the petitioners neglected to appear.

The chancellor properly disallowed costs to the petitioners.

APPEAL from a decree of the court of chancery made at the September Term, Franklin County, 1865, POLAND, Chancellor, upon the petition of the holders of coupons which had been severed from the bonds to which they had been attached and issued by the Vermont Central Railroad Company, and known as the first mortgage bonds

of said company, and sold by the holders of said bonds. The main facts in the case are set forth in the opinion of the court. It appears from the decree of the 19th of January, 1864, referred to in the opinion, that the parties to that decree were the Vermont and Canada Railroad Company, the Vermont Central Railroad Company, Lawrence Brainerd, Joseph Clark and John Gregory Smith, trustees of the first mortgage bondholders of the Vermont Central Railroad, and receivers of both roads aforesaid, and also certain ones named of the bondholders under the first mortgage of the Vermont Central Railroad, who appeared for themselves, and as committee for the bondholders in general. The said persons and parties so appearing made no objection to the granting of the prayer of the petition.

The said decree of January 19th was made in pursuance of an agreement previously entered into by all the parties to the decree.

The decree of the 19th of January among other things provided:

"*Eighth.* That the costs and expenses of building the extension of said Vermont and Canada Railroad to Highgate line, on the border of Canada, shall be paid by said trustees and receivers from the earnings and income of said roads and property, and for so much of such costs and expenses thereof as shall not exceed two hundred and fifty thousand dollars, the said Vermont and Canada Railroad Company shall, as often as such costs and expenses amount to the sum of not less than seventy thousand dollars (and for the last part thereof, to forty thousand dollars,) issue shares of its capital stock therefor, (beyond and above the said two millions of capital stock aforesaid,) and deliver such shares to said trustees and receivers at par, for the benefit of the first mortgage bondholders of said Vermont Central Railroad Company, and said trustees and receivers shall thereupon, on such delivery, distribute such shares of said stock rateably among said bondholders, in part liquidation of their respective claims as such."

"*Fifteenth.* The said cause in which said petition is filed shall be continued on the docket of this court, and any party in said cause shall be at liberty to apply to this court from time to time for further orders in the premises, as he or it may be advised."

The petition in the case now before the court which grew out of the decree of January 19th, seeks to have certain funds, in the hands of

the receivers of the Vermont and Canada Railroad Company, and the Vermont Central Railroad Company, paid to the coupon holders instead of the holders of the bonds from which the coupons were severed, or if necessary so modify the decree as to give the coupon holders the right to said funds. The court having ordered the receivers to make payment to the coupon holders in the order in which their coupons fell due, the petitionees appealed.

————— ———, for the petitionees.

*B. N. Davis*, for the petitioners.

The opinion of the court was delivered by

PECK, J. The question in this case is between the petitioners who are holders of certain interest coupons, and the holders of certain first mortgage bonds of the Vermont Central Railroad Company from which the coupons in question were cut. The controversy is whether the bondholders or the coupon holders have the better right to receive a payment which the receivers are about to make upon the mortgage debt out of funds in their hands.

In 1849 or 1850 the Vermont and Canada Railroad Company leased its road to the Vermont Central Railroad Company for a certain rent. By that lease the Vermont Central Railroad Company created a lien upon its road in favor of the Vermont and Canada Railroad Company to secure the rent, and under some provision of the lease the Vermont and Canada Railroad Company claimed the right, in case of non-payment of rent, to take and hold possession of both roads till the rent in arrear should be satisfied out of the net earnings, or otherwise paid. In 1851 the Vermont Central Railroad Company issued its bonds to the amount of $2,000,000. dated November 1st, 1851, payable November 1st, 1861, "*with interest at the rate of seven per cent. per annum* payable *semi-annually*" "*on presentation of the interest warrants*" "*attached.*" Coupons or interest warrants were attached to the bonds accordingly. The corporation secured these bonds by executing to trustees a mortgage of its railroad franchise and property. In June, 1852, the Vermont Central Railroad Company surrendered its railroad and property to the trustees who took possession under the mortgage and a deed of surrender then executed to them by the mortgagor. In 1855, while the trustees were in possession and operating both railroads, the Vermont and Canada Railroad Company

brought a bill in chancery against the Vermont Central Railroad Company, the trustees and some of the bondholders under the mortgage, for the purpose of enforcing their lien, claiming possession of both roads for non-payment of rent. Immediately on the commencement of this suit in chancery the trustees were appointed receivers in the cause as to both railroads, and have ever since been acting in that capacity. In that cause at the January Term, 1861, it was decreed among other things that the receivers should hold possession and operate the railroads, and out of the net earnings from time to time pay to the Vermont and Canada Railroad Company the rent under the lease, and hold the mortgaged property and funds arising therefrom at all times subject to the order and direction of the court. On appeal to the supreme court that decree in this respect was affirmed.

In the mean time before the court of chancery had entered the final decree in pursuance of the mandate of the supreme court, the Vermont and Canada Railroad Company and the first mortgage bond holders, or at least the great body of them, entered into an agreement of compromise embracing all matters of controversy. In order to give this arrangement binding force upon all parties in interest, an act of the legislature was procured under which a petition was brought to the court of chancery, and a decree obtained in accordance with that arrangement, on appearance and by consent of the Vermont and Canada Railroad Company, the Vermont Central Railroad Company, and the first mortgage bondholders, on the 19th of January, 1864. It is under this decree that the dispute arises whether the receivers shall pay to the owner and holder of certain of these interest coupons, or to the holders of the bonds from which these coupons have been severed and sold.

This decree among other things, besides a decree in the original case according to the decision of the supreme court, is, that the trustees and receivers shall pay out of the earnings of said roads and property, the costs and expenses of building the extension of the Vermont and Canada Railroad to Highgate line on the border of Canada, and that for such costs and expenses not exceeding $250,-000, the Vermont and Canada Railroad Company shall as often as $70,000. shall be expended, issue shares of its capital stock and de-

liver such shares to said trustees and receivers at par "*for the benefit of the first mortgage bondholders of said Vermont Central Railroad Company*, and said trustees and receivers shall thereupon on such delivery, distribute such shares of said stock rateably among said bondholders in part liquidation of their respective claims as such." It is further provided in the decree that after paying certain sums mentioned in the decree, the rents to the Vermont and Canada Railroad Company on the lease, (that being the prior lien,) incidental expenses, costs and expenses of building said road as above mentioned, and after paying the necessary expenses of running, keeping in repair and managing said roads and property, "*the net income thereof as the same shall accrue from time to time shall be by said trustees and receivers paid out and applied, first towards and for the payment in full of all sums due upon the securities called first mortgage bonds of the Vermont Central Railroad Company with lawful interest thereon, which are mentioned in and secured by the said first mortgage of said Vermont Central Railroad Company.*" It then provides that after paying the above, they shall pay the second mortgage ; and the surplus remaining shall be paid to the Vermont Central Railroad Company.

The receivers having given public notice that they were ready to pay three and one-half *per cent.* on the first mortgage bonds, which is the first $70,000. in Vermont and Canada Railroad Company stock mentioned in the decree, refuse the claim of the petitioners holding coupons, insisting that the payment should be made to the holders of the bonds from which they were severed. The petitioners petition the court of chancery, or the chancellor that made the decree, to give direction to the receivers to make the payment to them under the decree, or, if necessary, so to modify the decree as to give them the dividend. The chancellor grants the prayer of the petition by ordering the receivers to pay this dividend to the petitioners, the holders of the coupons, instead of the holders of the bonds from which they were severed. From this order the holders of the bonds from which the petitioners' coupons were cut appealed to this court.

It is objected that the petitioners are estopped from the relief asked for, on the ground that public notice having been given by advertisement in a newspaper, to all persons in interest, of the pro-

ceedings and hearing on the 19th of January, 1864, when the decree was entered, and the petitioners having neglected to appear, the decree is conclusive.

It is also objected by these bondholders, that the petition is misconceived; that if the petitioners are entitled to any remedy it must be sought by a petition filed in the original cause, and that all the parties to the decree should be made parties to the petition. Although this petition is not entitled as in the original cause, yet it recites the proceedings in the original cause and is so identified with it, that it must be treated as a petition in that case; and it is apparent the court of chancery must have so regarded it. As to the alleged want of parties, it is sufficient if all are made parties whose interest may be affected by granting the prayer of the petition. The petitioners ask nothing that affects the amount, time or mode of payment by the receivers. The only question is whether the holders of certain bonds shall receive the dividend, or the holders of certain of the *coupons* cut from those bonds. These bondholders and coupon holders, together with the receivers, are before the court on this petition, and no others are necessary as no other interests are to be affected. Nor can we see on what principle the petitioners should be estopped by the decree from claiming the relief sought. If they are not necessarily excluded by the terms of the decree, then their petition is only the ordinary case of an application for further directions to the receivers relative to their duty in making payment under a decree, without requiring any modification of the decree itself. The decree is not for payment to any particular persons by name, but to a class of persons. The language is, "*said trustees and receivers shall thereupon on such delivery distribute such shares of said stock rateably among said bondholders, in part liquidation of their respective claims as such.*" The decree does not determine in terms where the application shall be made, whether on the bonds or *coupons;* nor whether the holder of over-due *coupons* is a bondholder within the meaning of the decree. Disputes may arise under this decree as to title to bonds, or one may have the legal title and another claim an equitable interest or a lien by way of pledge or otherwise, so that the receivers may be in doubt to whom the payment should be made. Questions of this character, not settled by the decree, should be

solved by application to the chancellor or the court of chancery for further directions to the receiver. The application may be made by the receivers, or by the adverse claimants, or by either of them. It is true that the decree of January 19th, 1864, as to the $250,000. payable in Vermont and Canada Railroad stock, uses the word "*bond-holders*;" the language being, " *distribute such shares of said stock rateably among said bandholders in part liquidation of their respective claims as such.*" There is nothing in the proceedings to show, nor can it be intended, that any question was presented or decided as to the relative rights of bondholders or *coupon* holders, or that the decree was framed with a view to any such question. As to subsequent payments, the language of the decree is, " *the net* income thereof, as the same shall accrue from time to time, shall be by said trustees and receivers paid out and applied, first towards and for the payment in full of all sums due upon the securities called first mortgage bonds of the Vermont Central Railroad Company, with lawful interest thereon." As to this part of the decree it is clearly only a decree to pay upon the mortgage debt, of which the *coupons* constitute a part; and we think nothing further was intended by the decree in relation to the instalment in question payable in stock. This question then, between the coupon holders and bondholders, is left open, and not passed upon, or precluded by the decree, and may be decided either way without altering the decree. But if this is otherwise, since no such question was presented to the chancellor, it is competent for him on this petition to modify the decree in this respect, if the letter of the decree does exclude the *coupon* holders. This is the more clear from the fact that the decree provides that the cause shall remain on the docket, and that any party shall have the right to apply to the court for further orders.

The next question is what are the equitable rights of the petitioners as between them and the holders of the bonds from which the petitioner's coupons were severed. It is urged that the bondholders are entitled to the dividend in question for the reason that the *coupons* representing the interest are but an incident of the debt, and cannot be separated from the principal so as to become negotiable instruments, when separated in the hands of the holder. It is not necessary to decide whether they are negotiable separate from the bonds

so as to enable the holder to maintain an action at law ; for even if they are not, they are when matured a constituent part of the mortgage debt, and an assignment of them carries with it by implication an interest in the mortgage security.   If they are negotiable the effect is the same.   The transfer of one of several mortgage notes carries with it an equitable interest in the mortgage security, whether such note is given for principal or interest.   It is also urged that to allow such coupon holders to come in and share in the mortgage or trust fund, will increase the burden and expense of administering the trust, by multiplying the number of creditors among whom the distribution is to be made, and that therefore the payment ought to be made among the holders of the bonds only ; and the holders of such *coupons* left to seek their remedy on the bondholders.   But the corporation having made the coupons in terms negotiable, and the holders of the bonds having actually negotiated them for value, neither can now make this objection to the prejudice of others, who have relied on and paid their money upon the faith of such severance of the debt.   It is also claimed that by the terms of the bonds the Vermont Central Railroad Company agree only to pay to the bearer of the bond, and therefore it is bound to pay to no one else.   The bond is to pay to A. B. or bearer " with interest at the rate of seven *per cent. per annum, payable semi-annually*" "*on presentation of the interest coupons hereto attached.*"   As the *coupons* are made payable to bearer, and as the coupon only is required to be presented when paid, it is more reasonable to suppose the intention was to pay the *coupon* to the holder of the *coupon* in case it should be severed and sold without the bond.   If the language of the bond is to govern, it is to be noticed that the bondholders have disabled themselves from presenting the coupons for payment.

It is claimed on the part of the petitioners, among other reasons relied on, that as the coupons held by the petitioners are the oldest unpaid coupons, they ought to be paid first, because that would be the rule of application of the payment if the bonds and *coupons* were held by the same party.   But this is not necessarily decisive.   It is true that as between debtor and creditor the law will apply payments first to extinguish the interest.   But where a part of the mortgage debt has been assigned, and the mortgage security is about to be all ap-

propriated to pay the debt, and is insufficient to pay the whole, it is usually distributed *pro rata.* In such case mere priority of maturity of the debt does not give a right to preference or priority of satisfaction out of the security; especially when the whole debt, as in this case, has matured.

In order to determine the equities between these parties we must look at the condition and history of the trust property from which the fund in question arises, and the nature and purpose of the securities held by each, and also at the presumed intention and expectation of the bondholders in selling, and of the purchasers in buying the *coupons.* This property having been in the possession and use of the trustees since 1852, and most of the time in their possession as receivers, the net earnings going first to pay the rent due the Vermont and Canada Railroad Company, and next to be applied on this mortgage debt, it is evident that the only fund looked to for any immediate payment was the net earnings of the roads. The trustees out of the earnings paid the interest coupons from time to time up to and including those that became due May 1st, 1854. The presumption is that when these 6th coupons falling due November 1st, 1854, were sold, it was expected that further payments of interest coupons would be made from time to time from the earnings, and not that the mortgaged property would be immediately sold and appropriated to pay the mortgage debt, or that the earnings for at least a considerable length of time would more than pay the interest. Under such circumstances it is to be presumed that the expectation of the parties negotiating these *coupons,* was that such earnings as were applicable to the mortgage debt would be applied on the interest *coupons* in the order of their maturity, since that would be the proper and legal application had the *coupons* not been negotiated separate from the bonds. If that was the mutual expectation or implied understanding, it ought to be carried out unless something has transpired or come to light that renders it inequitable. It does not appear but that had the bondholders seen fit to have the whole mortgage property appropriated and the trust closed, there would have been sufficient to pay the whole mortgage debt; and the court cannot assume that when that is done there will be any deficit. So that allowing the *coupons* to be first paid, does not, so far as can now be known, work

any ultimate inequality or injustice. The bondholders have by their own consent procured this property to be placed somewhat permanently, or at least indefinitely, in the hands of the receivers, by the decree of the 19th of January, 1864, the net earnings only, after paying the rent of the Vermont and Canada Railroad, and expenses, to be appropriated upon the mortgage debt. Having done this and sold the *coupons*, it is equitable that the *coupons* should first be paid, and paid in the order in which they fall due. If this were a final distribution of the proceeds of the whole mortgage property, a *pro rata* distribution would probably be the rule. The fact that these three first instalments provided for in the decree of January 19th, 1864, amount respectively to the semi-annual interest of the first mortgage bonds, is strong evidence that the intention was that the application should be made on the semi-annual interest *coupons*.

The order of the chancellor on this petition being in accordance with this conclusion, is not erroneous, and must be affirmed.

The petitioners claim that the chancellor erred in not allowing them costs. The matter of costs depends so much upon discretion, that it is not usual for this court to revise the decree of the court of chancery as to costs, if the decree on the merits is not reversed or modified. But in this case we see no reason why the decree in relation to costs is not correct.

The decree is affirmed and case remanded.