## Case No. 13,406.

STEVENS et al. v. NEW YORK & O. M. R. CO. et al.

[13 Blatchf. 412.] [1]

Circuit Court, S. D. New York. June 14, 1876.

RAILROAD COMPANIES—MORTGAGE FORECLOSURE—ORDER OF DISTRIBUTION—PRO RATA DIVIDEND.

1. In directing the order of distribution, in a foreclosure suit, of the proceeds of the sale of the road and other property of a railroad corporation, mortgaged by it to trustees to secure the principal and interest due on registered and coupon bonds, it was provided, that unpaid coupons or interest belonging to a class in which a part of the coupons or of the interest had been paid, should be paid before coupons or interest falling due at a later period, and before the principal of any of the bonds; and that coupons detached, and in the hands of others than the holders of the bonds from which they were detached, should be paid before such bonds.

2. The mortgage provided, that, after default, the mortgagees should sell so much of the mortgaged property as should "be necessary to pay and discharge the principal and interest, according to the tenor thereof," of all the bonds issued, and there was no provision in the mortgage for a pro rata dividend of the proceeds of sale among all the bonds and their accrued interest.

[This was a bill in equity by John G. Stevens and others, trustees, against the New York & Oswego Midland Railroad Company and others, to foreclose a certain mortgage. The receivers applied for injunctions to restrain the tax collectors from proceeding to interfere with the property, by selling it, under warrants to satisfy certain state taxes. The applications were denied. Case No. 12,405. The cause is now heard on motion for an order of distribution. See, also, Id. 6,443.]

James Emott, for priority.
Francis N. Bangs, opposed.

BLATCHFORD, District Judge. In deciding, in March last, various questions raised in this case, I held that the coupons due July 1st, 1873, were not paid by the company or extinguished, and that they are valid in the hands of those who hold them (as between such holders and the holders of others of the bonds and coupons) to the extent of the sums for which they hold them as collateral security, if less than the face of the coupons, and, if greater, to the extent of the face of the coupons. Further consideration has confirmed me in the foregoing conclusion.

I further held that unpaid coupons or interest belonging to a class in which a part of the coupons or of the interest has been paid, should be paid before coupons or interest falling due at a later date, and before the principal of any of the bonds; and that coupons detached, and in the hands of others than the holders of the bonds from which they were detached, should be paid before such bonds are paid. I have heard a reargument of this question. The effect of the decision, as stated by those who are dissatisfied with it, is, that unpaid coupons or interest not maturing on or after January 1st, 1874, will be paid in the order in which they became collectible down to and including July 1st, 1873, and before payment of anything on the bonds. It appears that the unpaid interest which fell due January 1st, 1870, is $350 of coupons; July 1st, 1870, $70 of coupons; January 1st, 1871, $56 of coupons; July 1st, 1871, $185 50 of coupons; January 1st, 1872, $416 50 of coupons; July 1st, 1872, $12,246 50 of coupons, and $35 of interest on registered bonds; January 1st, 1873, $16,982 of coupons and $70 of interest on registered bonds; and July 1st, 1873, $265,540 50 of coupons and $70 of interest on registered bonds. The entire interest which fell due on and after January 1st, 1874, is unpaid, being, for each semiannual instalment, $265,424 of coupons and $14,576 of interest on registered bonds. The total semiannual interest was $280,000.

Of the unpaid interest which fell due before July 1st, 1873, $30,411 50 is in coupons, and $105 in interest on registered bonds. There is no proof of the present ownership or condition of any of the $30,411 50 of coupons, and no evidence as to whether they have been detached or not from the bonds with which they were issued. Of the unpaid interest which fell due July 1st, 1873, $265,540 50 is in coupons, and $70 in interest on registered bonds. No coupons which fell due July 1st, 1873, were paid, but all of them were at that time detached from the bonds with which they were issued, and became the property of parties, named in the evidence, other than the parties who continued to hold such bonds and the unmatured coupons belonging and attached thereto. Of the interest on registered bonds which fell due July 1st, 1873, $14,388 50 was paid.

It is contended that there is no principle,

1 [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]

legal or equitable, which entitles the interest which matured before July 1st, 1873, to be paid in the order in which it fell due, and before payment of any of the bonds; that is not shown that payment of the interest was ever demanded and refused; that no right to be paid the interest accrued until demand and refusal; that, until then, the debtor was not in default; that the debtor was justified in paying subsequently maturing interest, even though prior maturing interest remained unpaid, so long as the payment of such prior maturing interest had not been demanded; that he is prior in right who is prior in the time of presenting his demand, when presentment is required; and that those who, prior to July 1st, 1873, received their interest, received no preference as against those who did not receive their interest, because the latter did not demand it and the former did.

It is further contended, that the foregoing views apply equally to the interest which matured July 1st, 1873; that there is no proof that payment of any such interest was ever demanded from the debtor; and that, as to the unpaid coupons which matured July 1st, 1873, the present holders of them, as purchasers of them from the parties for whom they cashed them at their face value, acquired, as against such parties as still holding the bonds from which such coupons were detached, only the right to present the coupons for payment and to receive payment. The general principle is invoked, that, where several debts are secured by one and the same mortgage, and become due, and the mortgage is then foreclosed, they will be paid pro rata from the fund, if it is insufficient to pay the whole of them; and it is contended that the only exception to this rule is, where the mortgage, by its terms, creates a preference in favor of some of the debts, or where the original creditor, as to any which he has assigned, has designed to confer a right of prior satisfaction on the assignee. This general principle being applied in the proposed decree in this case to all the interest which matured after July 1st, 1873, and such interest being required to be paid pro rata with the principal of the bonds, it is contended that a different rule ought not to be applied to the interest which matured on and before July 1st, 1873. The principal contest is as to the preference claimed for the $265,540 50 of unpaid coupons which fell due July 1st, 1873, the amount of all the other unpaid interest which fell due on or before July 1st, 1873, being only $30,482 50.

The bill in this case sets forth that the debtor made default, on the 1st of July, 1873, in the payment of the coupons which became due on that day, and has never paid any of such coupons. As the bill is filed by the trustees under the mortgage, who represent the bondholders, I think this averment in the bill is properly to be taken, as against the bondholders, as an averment that the coupons which fell due July 1st, 1873, were presented, and payment of them demanded and refused, and thus default was made, inasmuch as every bond with coupons attached to it provides that the interest is payable on presentation of the coupons. But, in addition to this, I am of opinion that the transactions between the debtor and the parties who furnished the money to cash the coupons were such as to amount either to a waiver, on the part of the debtor, of the presentment of the coupons, because of a previous mutual understanding that they could not, and would not, be paid if presented, or to an actual demand and refusal.

In support of the preference claimed it is contended, that, as to interest which matured at any given time on and prior to July 1st, 1873, inasmuch as some of the parties entitled to receive such interest received it from the debtor, and some did not, the former will have received a preference, unless the latter are now to be put on an equal footing with them. To this it is replied, that there really was no preference; that, so long as the debtor was solvent, every party entitled to interest was paid as he presented his matured claim; that, if he did not present it, he took the risk of the debtor's becoming insolvent; and that he had no special property in, or lien on, the funds of the debtor, which could require the debtor to set apart funds sufficient to pay undemanded matured interest which fell due at an earlier date, before paying demanded matured interest falling due at a later date.

I do not think any distinction can be made between interest which matured before July 1st, 1873, and interest which matured on that day, growing out of the fact that payment of the latter was demanded and refused, or a demand was waived, and that the former was not demanded. I do not see how any diligence of those of a given class who were paid their interest, in asking to have it paid, can be imputed as laches to others of the same class who did not ask to be paid their interest, so as to work a virtual preference in favor of the former. To give to the latter their interest in full, before paying the principal of the bonds, is only to put all those in a given class entitled to interest on an equal footing; and to put them on such equal footing requires, also, that interest maturing at an earlier date shall be paid before interest maturing at a later date. Here are special equities, it seems to me, which would be violated, if such an inequality were left to exist as the exclusion from the full payment of interest of some of a given class. There is nothing in the terms of the mortgage, in this case, which requires such exclusion. On the contrary, the mortgage provides, that, after default, the mortgagees shall sell so much of the mortgaged property "as shall be necessary to pay and discharge the principal and interest, according to the tenor thereof," of

all the bonds issued, and shall, out of the moneys arising from such sale, pay the principal and interest which shall then remain due and unpaid on the issued bonds. The words, "according to the tenor thereof," may very well be held to embrace the payment of interest, according to the times of the semi-annual recurrences of interest, and in such order. Certainly, there is nothing in those words, or elsewhere, in the mortgage, that forbids a course which is absolutely necessary, unless a result is to be effected which will not be a payment of interest according to the tenor of the bonds, but will leave some part of a given instalment of interest paid in full, and the rest of it not paid in full. In the case of Dunham v. Railway Co., 1 Wall. [68 U. S.] 254, the mortgage provided, that, in case of default and a sale, all bonds, and the interest accrued thereon, should be equally due and payable, and entitled to a pro rata dividend of the proceeds of sale. Hence it was held that there could be no preference of past due coupons over the principal of the bonds.

No case was cited on the argument which decides the above question adversely to the view I take. Most of the cases cited were not cases of coupons or interest on numerous bonds secured by mortgage, and none of them were cases where some interest in a given class had been paid and the rest not paid, and the fund was insufficient to pay all the principal and interest due. The case of Sewall v. Brainerd, 38 Vt. 364, was not such a case, nor was the case of Miller v. Rutland & W. R. Co., 40 Vt. 399; and, in the latter case, no preference was claimed.

The above views cover all the questions involved. But, as to the holders of the unpaid coupons of July 1st, 1873, there seems to me to be a special equity. It was through the advance of money to cash those coupons in the hands of the holders of the bonds to which they belonged, that such holders obtained the money for those coupons. On such advance, those coupons passed into the hands of those who now hold them. But for such advance, the coupons in the hands of the original holders of them would not have been worth their face value, as they were made to be by such advance. The original holders of such coupons must be regarded as still holding the bonds to which such coupons belonged, or, if not, those who hold such bonds and subsequently maturing coupons belonging thereto must be held to be subject to the same equities with such original holders. No special reasons are shown, in the evidence, why, as against any of such holders, the present holders of the coupons of July 1st, 1873, are estopped from claiming priority. Those who had their coupons of July 1st, 1873, cashed by means of such advance, retained the money, and, to permit them now to exclude the holders of such coupons from being paid in full, and put on an equality with the registered interest of July 1st, 1873, which was paid in full, would be to permit them to work an inequality which would be unjust.

---

STEVENS v. NEW YORK & O. M. R. CO. See Case No. 6,443.