WILLIAM WOOD *v.* EZRA ADAMS, CORNELIA ADAMS AND ZELOTES BIGELOW.

[IN CHANCERY.]

*Mortgage.    Foreclosure.    Homestead.    Practice.*

The proceeding by petition in accordance with the act of 1852, entitled "an act to diminish the expenses of foreclosing mortgages in equity," (Acts of 1852, No. 12, p. 9,) is as proper in disputable as in undisputable cases of foreclosure.

A. agreed with the orator to buy a farm for $1600, and gave a mortgage of his homestead, signed by himself and wife, to secure the payment of five hundred dollars of the price. When this five hundred dollars should be paid, he was to have a deed of the farm, and was to mortgage it back for the balance of the price. He took possession of the farm, and at the end of the year, being unable to raise to $500, and the orator being unable to give a perfect title to the farm, it was mutually agreed between them not to go on with the trade, but that the mortgage of the homestead should stand as security for the value of the use of the farm for the past year, which was fixed at two hundred dollars. *Held*, that this agreement was binding as against the homestead.

PETITION for the foreclosure of a mortgage.

The facts sufficiently appear from the opinion of the court.

*Wm. Hebard*, for the orator.

*P. Perrin*, for the defendants.

ALDIS, J.    I.    This is a petition to foreclose a mortgage under the statute to diminish the costs of proceedings in equity. The defendants have answered, and testimony has been taken as is

usual in litigated cases commenced by bill. It is objected that the statutory mode of proceeding by petition is to be used only in cases where no defence is made ; and that where the facts are in dispute, the only proper mode of proceeding is by bill. There is nothing in the statute to indicate such an intent. The mode of proceeding by petition is as convenient in practice for the trial of disputable cases as the old mode. The general practice in the state since the passage of the statute has been to begin by petition in all foreclosure cases, whether contested or not ; and this court has heretofore recognized the practice as proper and legal. This objection is untenable.

II. The defendant, Ezra Adams, agreed with the orator to buy a farm for $1600. For five hundred dollars (the first instalment towards the price,) Adams gave his note secured by a mortgage of his homestead ;—the mortgage executed by him and his wife,—the note signed by him alone. For the rest he gave his own notes. When this five hundred dollars was paid he was to have a deed of the land and to mortgage it to secure his other notes. Adams took possession of and occupied the farm one year. Then, he being unable to raise the five hundred dollars, and the orator being unable to give him a perfect title, it was mutually agreed not to go on with the trade, but that Adams should surrender the possession of the farm to Wood, and pay for the year's use of it, and Wood should give up the notes he had taken for the purchase money. The value of the year's use was left to arbitrators, who awarded two hundred dollars, and Wood and Adams after publication of the award signed a writing by which the five hundred dollar note and mortgage was to remain a security in Wood's hands for the payment of this two hundred dollars, and this suit is brought to collect the two hundred dollars, by foreclosing the mortgage.

The defendants claim that the wife's interest in the homestead is discharged from the operation of the mortgage, and that no decree should pass against her.

If the original bargain for the purchase of the farm was wholly abandoned, and given up, and the agreement to submit to arbitrators the question of how much Adams should pay for the year's use, was a new and independent agreement, then the mort-

gage which was merely security for the old agreement might be considered as at an end so far as the wife was concerned. But if the two hundred dollar note and its security by mortgage was a part of the agreement to give up the trade, and the security and payment of this two hundred dollars was to be the condition on which the old trade was to be abandoned, then we think the five hundred dollar note and mortgage would be in force till the two hundred dollars was paid.

The agreement in writing signed by Adams and Wood, and all the other evidence tend to show that the five hundred dollar note and mortgage were kept on foot for the very purpose of securing this two hundred dollars, and were not to be discharged till this sum was paid. Nor was this sum of two hundred dollars a debt disconnected with the purchase of the farm,—the separate liability of the husband, and which, as against his wife, he would have no right to make subject to the mortgage. On the contrary, it was a value he had received from the use of the farm for which in part the five hundred dollar note and mortgage were given. To obtain the discharge of the mortgage (which was a benefit to the wife,) he was obliged to pay or secure this sum of two hundred dollars ; and its payment therefore enured to her benefit. The husband was authorized to negotiate for the giving up of the trade, and of the securities which he and his wife had given upon the purchase. This authority existed by virtue of his relation to her, and the liability in regard to the mortgage of the homestead which they had jointly assumed. Nobody else could act for her, nor could she act for herself so as to make a binding contract. If any one therefore was to act to obtain a discharge of the mortgage, it was the husband.

If the bargain for abandoning the purchase is to be itself abandoned, and the original bargain to be revived, then the note and mortgage would be in force to become the subject of litigation, which might be expensive and injurious to the wife's interests. The husband, both for himself and wife, might well desire to avoid such controversy ; and his negotiation and settlement we think were lawful and beneficial both as to his wife and himself.

The decree is affirmed.