BARBER, ADMR. *v.* THOMPSON.

[ IN CHANCERY.]

*Trusts and Trustees.*

Defendant's father and mother conveyed their farm to him, and at the same time he gave them a bond, conditioned for their support, and for the payment of $400 to his sister on a certain day, and executed a mortgage on the farm to secure the performance of the condition of the bond. *Held*, a trust in defendant as to the $400, sufficiently created and declared to answer the requirements of the statute.

*Held*, also, that said trust was not revocable without the consent of the *cestui que trust.*

APPEAL from the Court of Chancery, Bennington County. The bill alleged that the orator was administrator of Abigail Y. Barber, who died intestate on November 3, 1871, who was daughter of Nelson and Mary Thompson and sister of Perry H. Thompson, the defendant, and who at time of her decease was and for many years had been the orator's wife ; that on or about September 30, 1870, said Nelson and Mary Thompson, with a view of securing to themselves a comfortable support in their old age, and to make provision for their children, deeded to their son said Perry a farm of the value of about $10,000 ; that said Perry accepted said deed, and in consideration thereof took upon himself the performance of certain duties, trusts, and obligations, among which was the payment of $400 to said Abigail or her heirs on April 1, 1871, which said sum said Perry bound himself to pay to, and declared that he held in trust for, said Abigail by a certain instrument in writing   The bill then set out a bond in common form duly executed by said Perry on —— day of September, 1870, the condition of which was that said Perry should support said Nelson and Mary, either in the house and family of the said Perry, or elsewhere as they might elect, and, among other things, pay to said Abigail said sum, as alleged, and was further as follows : " and the said Perry is to permit the children of the said Nelson to make the home of the said Nelson and Mary their home, and those that are minors he is to support, clothe and educate by their rendering to him their reasonable services, and if any question shall arise between the said Perry and either of said children in relation to the matters aforesaid, the same shall be left to the determination of said Nelson and Mary, and the said Perry shall perform their awards, and if any difference or disagreement shall hereafter arise between the said Nelson and Mary, or either of them, and the said Perry, the same shall be left to the determination and award of Elijah Barber and A. B. Gardner, or the survivor of them, and the said Perry shall faithfully perform their said awards. And if the said Perry shall faithfully perform as aforesaid, then this obligation to be void ; otherwise of force." The bill further alleged that said Perry, on September 30, 1870, in order to secure the performance of the conditions of the said

bond and the trusts therein declared, executed a mortgage deed of the lands then so conveyed to him, to said Nelson and Mary, in which said bond was recited and provision made that said mortgage deed should become void only in the event of performance of all the conditions thereof by said Perry ; that said Perry did not pay said sum or any part thereof to said Abigail, although he admitted his equitable obligation so to do, and acknowledged the binding force of said instrument, which created a trust for her benefit, and about that time offered to give her his promissory note for said sum, and that although said Perry did not during her lifetime give her any note or pay her said sum, the orator believes he intended to pay her said sum, and never thought of endeavoring to avoid payment until some time after her decease, when said Perry procured said Nelson and Mary to execute and deliver to him a certain instrument in writing, which was recorded on the town records, and which said Perry asserted discharged him from any liability to said Abigail, or her heirs or estate, for said sum. The bill then set out a discharge of said mortgage as to the payment of said sum to said Abigail, duly executed by said Nelson and Mary, on March 22, 1873, whereby said Nelson and Mary acknowledged full payment of said sum, and released and discharged said Perry from all obligation and liability to pay said sum or any part thereof to any one.

The bill further alleged that said discharge was made and executed without the consent of the orator or any other person having authority to represent said Abigail, and for the purpose of depriving her heirs and legal representatives of their right to said sum ; that said Perry claimed and insisted that said instrument absolved him from any liability to pay said sum to the orator, and wholly refused to pay him said sum or any part thereof; that the transactions between said Perry and said Nelson and Mary as set forth in the various papers executed by them on September 30, 1870, operated to create a binding and obligatory trust for good and sufficient consideration in favor of said Abigail to the amount of $400, and that said Abigail had an equitable lien upon the real estate conveyed by said Nelson and Mary to said Perry to secure the payment of said sum, and the enforce-

ment of said trust, and that said lien could not be discharged in the manner attempted by said Perry, Nelson and Mary, by the writing dated March 22, 1873, nor in any other way, without the consent of the said Abigail or her personal representatives.

*Prayer*, that said Perry might be decreed to pay to the orator said sum with interest thereon after April 1, 1871, and that upon his neglect or refusal to pay the same, said Nelson and Mary be compelled to enforce payment thereof by foreclosure of the mortgage given them to secure the performance of the conditions of said bond, and make effectual the trusts therein expressed; and that the said Perry might be required to surrender to be canceled the discharge given him by said Nelson and Mary, and that the orator may have such other and further relief in the premises as the nature and circumstances of the case might require, &c.

The joint and several answer of the defendants admitted that the orator was the husband of said Abigail, and that the defendants were respectively her brother, father, and mother, and that she died November 3, 1871; that on September 30, 1870, said Nelson and Mary conveyed to said Perry the fee of a certain farm, and that he in return executed unto them a bond and mortgage substantially as set forth in the bill, that said Perry had not paid said sum to said Abigail nor to plaintiff; that said Nelson and Mary on March 22, 1873, executed the discharge to said Perry substantially as set up in the bill, and that the same was never consented to by the plaintiff; and denied that said farm was worth $10,000. Defendants Nelson and Mary particularly denied that their object or purpose in making the conveyance of said farm was as stated in the bill, or that said conveyance was made with any view of making provision for their children or any of them, or that any consideration whatever moved from said Abigail to them or to any of the defendants, or to any person, for the clause in said bond alleged to constitute a trust, or for said conveyance; denied that said Perry ever declared that he held said $400, or any other sum, in trust for said Abigail, or admitted to her or to any other person in her behalf that he was legally, equitably, or morally bound to pay her said sum or any other sum, or that he ever offered to give said Abigail his promissory note,

and denied that he ever had any intention of paying her said sum of $400, except at the request and by direction of said Nelson and Mary; denied that said Perry procured said Nelson and Mary to execute said discharge, but averred that they of their own motion discharged said Perry from all and every obligation to pay said sum to said Abigail; and denied every other allegation of fact in said bill.

The answer further denied the several conclusions of law in said bill alleged; that the execution of said deed, bond and mortgage created a binding and obligatory trust for good and sufficient consideration in favor of said Abigail; that said Abigail had an equitable lien upon the real estate conveyed as aforesaid to secure the same; that said lien could not be discharged by the instrument of March 22, 1873, and that said Perry took upon himself the performance of certain duties, trusts, and obligations, among them being the payment of said $400 to said Abigail; and denied that said Perry took upon himself such duties, etc., as aforesaid, further than resulted from the several conveyances and deeds above admitted; alleged that until the execution of said deed, bond and mortgage, the defendant Nelson was owner in fee of said farm, and had full and perfect right to dispose of the same as seemed to him best; that previous to said time it had been arranged by and between said Perry and said Nelson and Mary, that said Perry should remain at home, occupy and till the farm, dwell with and care for his parents in their declining years, and that in pursuance of such arrangement the farm was conveyed and the bond and mortgage executed as aforesaid; that at the time of such conveyance, and at all times thereafter, it was designed that the consideration paid by said Perry should belong exclusively to the said Nelson and Mary; that for the purpose more effectually to secure to the said Nelson and Mary the complete and entire control of the consideration to be paid by said Perry, they took the bond and mortgage to themselves, and to themselves reserved the right to settle and determine all questions that should arise between said Perry and any of said children; that at the time of the execution of said deeds it was expressly agreed and understood, as a part of said transaction, that said Nelson and Mary

had full right and power to revoke or change any of the provisions of said bond, and to dispose of said consideration money as they saw fit; and that the defendants then supposed and still believed that they had full right to surrender or discharge said bond and mortgage, or any part thereof, as they might agree, being the only parties thereto; that said conveyance to said Perry was made without the knowledge of said Abigail, and that she was never consulted about said conveyance and bond at any time, and that she never communicated to any of the defendants any acceptance or affirmance of any trust that might be supposed to be created by said bond; that about a year after the giving of said bond said Abigail died, leaving no children, and that then said Nelson and Mary, desiring not to have their property diverted into the possession of strangers not bound to them by ties of blood, revoked their proposed gift to said Abigail, and in order to extinguish any color of claim which might then exist, made an arrangement with said Perry whereby for good consideration moving from him they executed the discharge; averred that the clause in said bond relating to said Abigail was inserted solely in the nature of a testamentary disposition of said Nelson's property, and that by the death of said Abigail the same had lapsed; and alleged that no application had ever been made to said Nelson and Mary by said Abigail nor by plaintiff, nor by any one for them, that they should determine the question that had arisen between said Perry and plaintiff, which it was provided by said bond should be determined by them.

The cause was by agreement heard by WHEELER, Chancellor, at the December Term, 1875, upon bill, answer, and exhibition of said deed, bond, mortgage, and discharge; and the bill dismissed, *pro forma*, with costs to the defendants.

*Davenport & Eddy*, for the orator.

The effect of the transaction of September 30, 1870, was to create a trust for the use and benefit of Abigail and her heirs. She and they thereby became entitled to receive $400 from Perry on April 1, 1871. The payment of that sum to her and her heirs, was charged by the written declaration of Nelson, Mary, and Perry

upon the land conveyed. Perry took the land, and the title thereto, burdened with that trust. All the constituent elements of a trust exist in the case. The trust is "created and declared by an instrument in writing, signed by the parties creating or declaring the same," as the statute requires. Gen. Sts. c. 65, s. 22; *Pinnock* v. *Clough*, 17 Vt. 508.

It is averred in the answer, and is a substantial ground of defence, that "no consideration whatever moved from said Abigail to any of defendants, or to any other person, for the clause in said bond alleged to constitute a trust;" but that was not so. The relation of blood and affection between the donors and the *cestuis que trust*, afforded as to them a good and meritorious consideration. As to Perry the consideration was both good and valuable. He received the title to a valuable farm upon the consideration, among other things, that he should pay said sum to his sister, or her heirs. It is clear upon principle and authority, that the orator's intestate had a perfect vested right to receive said sum from said Perry on and after the day of payment. There are well-considered cases that hold that an action at law would lie to enforce payment, upon the authority of which this administrator might have recovered but for the conduct of defendants in destroying the security which the intestate had, and the necessity of resorting to chancery for discovery. Bliss Life Ins. 496, 497; *Davenport, admr.* v. *Insurance Co.* 47 Vt. 528; *Corey* v. *Powers & Foster*, 18 Vt. 587. If the right of the intestate to sue at law upon the promise or covenant of her brother to pay her is questionable, we think there is no doubt but that a court of equity would have decreed payment upon the state of facts existing April 1, 1871. If that be so, her right to receive it could not be divested without her consent. She never did consent, therefore her right devolved unimpaired upon her personal representative. Her death in no way changed the legal rights of the parties. We think it plain, that the purpose of the settlors of this trust, was to vest an indefeasable right in each of their children.

We have considered the case upon the theory that a consideration either good or valuable was needful to support a trust. The law, however, does not require any consideration for an executed

trust. Had the trust been purely voluntary, and had the orator's intestate been a stranger in blood, this trust would be carried into effect. Lord ELDON stated the rule of law, as it has always been understood and acted upon, in the leading case of *Ellison* v. *Ellison*, 6 Ves. 656, thus : " If the trust is perfectly created so that the donor or settlor has nothing more to do, and the person seeking to enforce it has need of no further conveyances from the settlor, and nothing is required of the court but to give effect to the trust as an executed trust, it will be carried into effect although it was without consideration, and the possession of the property was not changed. * * * I take the distinction to be, that if you want the assistance of the court to constitute you *cestui que trust,* and the instrument is voluntary, you shall not have that assistance," but if the trust is executed, as if a " party has completely transferred stock, though it is voluntary, yet, the legal conveyance being completely made, the equitable intent will be enforced by this court." Perry Trusts, s. 98 ; *Ellison* v. *Ellison*, 6 Ves. 656 ; s. c. 1 Lead. Cas. Eq. 199 ; Lewin Trusts, 134–5 ; 2 Story Eq. Jur. s. 793 a.

Where there is merely an executory agreement without consideration, to execute a written declaration of a trust, courts will not regard it. On the other hand, if a party has declared himself to be a trustee, as in the case at bar, the beneficial interest becomes *ipso facto* vested in the *cestui que trust* without further action, and courts will lend their aid to enforce his rights. That distinction is clearly defined, and runs through all the cases. *Ex parte Pye,* 18 Ves. 149 ; Perry Trusts, s. 96 *et seq.* ; *Badgley* v. *Votrain,* 18 Am. Rep. 541.

Another ground of defence is that the conveyance was made to Perry, and the bond containing the declaration of the trust executed by him, " without the knowledge of said Abigail, and she was never consulted thereabout, advised with, or spoken to on the subject, etc." This is wholly immaterial. No notice to the *cestui que trust,* even in case of a voluntary trust, if in other respects properly created, is necessary. Perry Trusts, s. 105 ; *Moses* v. *Murgatoyd,* 1 Johns. Ch. 129.

It is further claimed that the provision in said Perry's bond for

the payment of $400 to the intestate, was so far in the nature of a testamentary disposition of a portion of said Nelson's estate that Nelson could recall the gift or revoke it during his lifetime. We have shown that there was not a testamentary disposition, but an express declaration of a trust. It follows that the trust cannot be revoked or annulled without the consent of the *cestui que trust.* Perry Trusts, ss. 77, 86, 104 ; *Hunnewell* v. *Lane*, 11 Met. 163.

The authorities are abundant to show that nothing less than the deed of Abigail or of her administrator, would discharge the land from the trust. The deed or release of March 22, 1873, could not affect the orator nor his intestate.

It is averred in the answer, that no application had ever been made to the said Nelson and Mary by the said Abigail, nor by the plaintiff, nor by any one for them, that they should determine the question that had arisen between them, etc. A reference to the bond will show that the questions here involved were not among those that were to be submitted to the arbitrament of Nelson and Mary. The provisions for arbitration relate to those questions that might arise between Perry and the younger children, in regard to their support and education, and their labor during their minority. The matter of how much each child should receive from Perry, and when it was payable, was so definitely fixed in the bond that there was no opportunity for controversy or arbitration. To require the orator to submit the questions involved in this suit to two of the defendants, is an absurdity that has no warrant in any system of jurisprudence. A law that would make a man judge in his own cause would be void. Again, the case shows that Nelson and Mary, without the orator's knowledge, consent or presence, have decided the cause, rendered judgment in favor of their codefendant, and, as far as they had power to do so, discharged him from all liability created by the transactions of September 30, 1870. But there is another answer to that defence. The agreement to arbitrate, even if it extended to that controversy, had no binding force. " Parties cannot contract themselves out of their right to have their disputes settled in courts of justice." Caldwell Arb. c. 3, and notes. What is alleged in the answer in regard to the intention of Nelson is of no

importance. The intent of the parties is to be ascertained from the deeds, interpreted in the light of the facts existing at their execution. It is apparent that the purpose of Nelson and Mary was to make a provision for their children, and for their personal support and maintenance. To that end they placed their property in Perry's hands, and he took it upon the various trusts he declared in his bond, among other things, to pay $400 to the intestate or her heirs.

*Henry A. Harman,* for the defendants.

The claim of the orator in this case, that the facts appearing show a complete, valid, executed, and irrevocable trust in favor of the plaintiff's intestate, is opposed by the defendants upon the following grounds:

1. Because there was in fact no perfect and complete trust.

It has long been settled that, in favor of a mere volunteer, claiming upon no ground of valuable consideration, a court of equity will not interfere to complete an instrument of trust or gift which the giver has in any way left incomplete. Lewin Trusts, 110 ; *Ellison* v. *Ellison,* 6 Ves. 662 ; Perry Trusts, s. 100 ; *Richards* v. *Delbridge,* 18 Eq. Ca. 11 ; *Nicholson* v. *Heartley,* 19 Eq. Ca. 233 ; *Milroy* v. *Lord,* 4 De Gex. F. & J. 264 ; *Carhart's Appeal,* 78 Penn. 119.

That the plaintiff is a volunteer, and stands upon no ground of valuable consideration, cannot admit of any discussion. Perry Trusts, s. 107. The instruments alleged to constitute a declaration of trust are incomplete. The statutes of this state require that every trust concerning land shall be created or declared by an instrument in writing, signed by the party creating or declaring the same, or by his attorney. Gen. Sts. c. 65, s. 22.

It cannot be claimed that the defendant Perry, by the bond which he signed, has created or declared any trust. All he did was to enter into a contract with Nelson and Mary ; and to any suit thereon his complete answer is, that the parties with whom he has contracted have released and discharged him from that claim. The person who must be claimed as creating or declaring the trust, if any one, is Nelson ; and this suit is based, not upon

any violation by Perry of his contract, but upon the idea that Nelson and Mary had no right to discharge the bond as against the plaintiff; whereas the only writing signed by Nelson was a plain warranty deed to Perry, containing no creation or declaration of any trust whatever. Had Perry owned the property at the time, and agreed in writing to hold it for Abigail, he would have declared a trust; but he could not declare a trust in the property of another. While these papers must be considered together, as forming parts of the same transaction, yet in the deed from Nelson to Perry there is no reference to the bond so as to make the latter a constituent part of the former deed.

The alleged trust was never communicated to the orator's intestate, nor did she ever accept or affirm the same; and it was duly revoked, if it could be revoked, by the release of March 22, 1873, after the motive for its creation had failed by the death of the plaintiff's intestate, and before suit brought. There must be shown an affirmance by the orator's intestate before revocation, and that within a reasonable time. Story Eq. Jur. s. 972.

But had the alleged trust been perfectly created upon its face, yet it contains within itself such an implied or constructive power of revocation as will authorize the discharge complained of.

It is well settled that, although upon the face of the papers there may seem to be a trust perfectly created, yet the court in determining as a question of fact whether in reality there was such a trust, will consider the situation of the parties, the nature of the property, the purposes or objects of the settlor, and the other circumstances of the case, all of which are extrinsic matters, and must be proved by parol, and from which the court may find, as a matter of fact, that the supposed trust was never perfectly created, or that it was revocable. Perry Trusts, ss. 99, 103. From the circumstances of the case, it clearly appears never to have been the intention of the settlor that the trust should operate other than as a testamentary disposition.

In various reported cases, such facts as the lack of notice, non-delivery, failure of motive, and many others, are considered as circumstances showing that the settlor had not actually parted with the control of the property, and that therefore there remained

a power of revocation.   Perry Trusts, ss. 99, 103.   The trust, if any there be, results from the operation of a bond and mortgage. A mortgage has certain well understood properties, prominent among which are the right and power of the mortgagee to discharge the same at pleasure.   It is insisted, therefore, that if a donor makes a declaration of trust by means of a mortgage to himself, there will be a constructive power of revocation which the court is bound to notice and enforce.

In the condition of the bond it was stipulated that "if any question should arise between the said Perry and either of said children, in relation to the matters aforesaid, the same shall be left to the determination of said Nelson and Mary."   If this were an action between parties to a contract containing such a stipulation, it might be objected that parties could not contract themselves out of their right to sue.   But since there is no dispute between the contracting parties, — since, according to the orator's view, the condition of the bond was the condition of a trust, settled by Nelson upon the orator's intestate, — it was competent for him to affix to his voluntary gift such conditions as he chose, even to the extent of referring to the decision of the giver all questions connected with the gift; which, it is insisted, amounts to a power of revocation.   That there is neither injustice nor absurdity in this, but only a natural right, is well shown by the analogy of *Markwell* v. *Markwell*, 34 Beav. 12.

But if the papers exhibited a well-created trust, and one that did not contain a constructive power of revocation, yet there are circumstances about the case which show that according to well-settled law it should contain a power of revocation, which a court of equity will, if necessary, engraft upon the papers as a reformation of the contract.   Although there is no doubt that a man may most improvidently alien his own property, provided he do so with clear understanding and deliberate intent; yet whenever an instrument is so executed that through accident or mistake it does not correctly represent the intention of the settlor, it will be set aside, and a power of revocation implied therein, upon the application of the executing party; and, in particular, the absence of such a power of revocation in a trust, is viewed in equity as a

circumstance of suspicion, especially where there is no apparent motive for the irrevocability, or where the original motive for the gift has failed. *Naldred* v. *Gilham*, 1 P. Wms. 577 ; *Huguenin* v, *Baseley*, 14 Ves. 273 ; *Hastings* v. *Orde*, 11 Sim. 205 ; *Coutts* v. *Ackworth*, L. R. 8 Eq. Cas. 558 ; *Everitt* v. *Everitt*, 10 Eq. Cas. 405 ; *Hall* v. *Hall*, 8 Ch. App. 430 ; *Phillips* v. *Mullings*, 7 Ch. App. 244 ; *Wollaston* v. *Tribe*, 9 Eq. Cas. 44 ; *Garnsey* v *Mundy*, 24 N. J. Eq. 243 ; *Russell's Appeal*, 75 Penn. 269 ; *Tucker's Appeal*, 75 Penn. 354 ; Perry Trusts, s. 104, and notes. And where the deliberate intent to make an irrevocable gift does not appear, where no motive for such a gift is shown, or such motive, if any might have existed, has failed, the omission of a power of revocation is *prima facie* evidence of a mistake, and casts the burden of supporting the settlement upon the claimant. *Russell's Appeal*, 75 Penn. 269 ; Am. Law Reg. June, 1874, 354. Some of the circumstances to be considered in determining both whether a trust was perfectly created, and whether there was a mistake, are : — the character of the instruments, being bond and mortgage, instruments designed to be discharged and cancelled at the pleasure of the mortgagee ; the proviso for the submission of all questions, whereby Nelson and Mary could control the disposition of their property ; the abstaining from informing the proposed beneficiary of the proposed gift ; the actual intention and understanding that Nelson should and did still retain the control of the avails of his farm ; the fact that at the time of the execution of the bond and mortgage, as the law of the state then stood, Nelson would be the sole heir and distributee of the intestate if she died without issue. Gen. Sts. c. 51, s. 1, c. 56, s. 1 ; whereas, on November 22, following, the law was so changed that the plaintiff has become entitled to the fund. Acts of 1870, No. 31 ; the death of the intestate, November 3, 1871, leaving no children ; the actual revocation, March 22, 1873, of the asserted gift, before suit brought.

The opinion of the court was delivered by

BARRETT, J. The deed, the bond, and the mortgage, constitute a single, entire transaction. The deed conveyed the legal title to

29

Perry. The bond shows the character and purpose of the deed. The mortgage secures the fulfillment of such purpose.

The purpose of the conveyance was, among other things, to give to Abigail Barber $400. The conveyance was made upon that consideration, in part; and Perry received and holds the title in virtue of his covenant to pay that sum to her by April 1, 1871. When the papers had been executed and delivered, the rights, duties, and liabilities of the respective parties, contemplated by the transaction and to be affected by it, were fixed and operative. As the result, said Abigail had the right to have the $400 paid to her on the day stipulated, and it was the duty of Perry to pay it. It was a right vested in her by the transaction. The father had put into his hands the property out of, and in consideration of which, said sum was to be paid, and Perry covenanted to pay it—that is, to appropriate that value of that property for that purpose. This constituted a trust in him, created and declared by the writings executed and delivered by and between the parties thereto. It was a completed transaction, with nothing left to be done in order to render it effectual for the purposes proposed. Nothing was left contingent, nothing discretionary, nothing provisional or conditional, so far as related to Abigail.

This then answers the requirements of our statute as to trusts; and, at the same time, answers to the utmost requirements of the common and equity law of the subject as stated in the text books, and as applied and illustrated in the cases. Such a trust is as irrevocable as an executed gift. The right of the *cestui que trust*, after having become perfected and vested, cannot be invalidated or devested by the acts of the parties creating the trust. Nothing short of the act of the *cestui* is effectual as against such right So are all the authorities cited on both sides in the argument. The general doctrine is well stated by BIGELOW, C. J., in *Stone* v. *Hackett*, 12 Gray, 227; Perry Trusts, s. 101 *et seq.* In section 104 it is said: "If the voluntary trust is once perfectly created, and the relation of trustee and *cestui que trust* is once established, it will be enforced, though the settlor has destroyed the deed, or has attempted to revoke it by making a second voluntary settle-

Barber, admr. *v.* Thompson.

ment of the same property." Section 105: Nor is notice to the *cestui que trust*, or to the trustee, and acceptance by him, essential to the validity of a voluntary trust, as against the settlor, if it is otherwise perfectly created. For the law of the subject controlling this case, see Hill Trustees, 52, 83, and notes. We refrain from repeating or discussing the established and familiar propositions of the law by which this case is embraced and controlled.

In the deeds creating the trust, no power of revocation is reserved or contained. When the trust is not impeachable for other reasons, the lack of such power reserved has no effect even as evidence of mistake, provided there appears to have been the intent to make an irrevocable gift. In this case such an intent is fully manifest upon adequate and worthy motive, which does not appear in any manner to have failed. There is no circumstance nor incident indicating the existence of any ground known to the law for holding the trust invalid or revocable.

We consider the case upon its own facts, and decide it accordingly, and do not indulge in speculation nor disquisition as to how we should decide it if it had been different from what it is.

It is specially to be noted, that the attempted act of revocation consists in giving to Perry, the trustee, the amount that had been given by the deeds creating the trust, to Abigail, without any new consideration or apparent motive, that is, making a voluntary gift to Perry of what had already been, by an effectual transaction, given to his sister.

The point that is made, as to the provision in the condition of the bond for leaving to said Nelson and Mary the determination of any question that should arise between said Perry and either of said children, has no foundation. That provision had no relation to such questions as are involved in this case, viz., whether a trust was created so as to entitle a court of equity to give it effect—whether it was revocable—whether it has been revoked. Nothing of this kind could have been in mind by the parties to the transaction creating the trust, as is evident both from the nature of the subject and from the provision referred to.

*Mandate.*   Decree reversed, cause remanded, for decree that said sum of $400, and interest on it from April 1, 1871, be paid to the orator by said Perry N. Thompson, on demand, and that it be made a charge on the real estate aforesaid till paid, and that the orator recover costs.