## ALICE J. AND CARRIE B. SARGENT *v.* ALBERT F. BALDWIN AND OTHERS.

*Voluntary Settlement. Powers of Revocation. Trusts. Foreclosure of Mortgage. Parties. Assignment.*

1. A voluntary settlement, fully completed, cannot be annulled by the settlor, when it has been fairly made with knowledge of its effect, and no power of revocation is reserved; thus, the owner of real estate conveyed it to the defendant who executed a mortgage back, conditioned for the maintenance of the mortgagee and his wife and for the payment of $1000.00 within a reasonable time after their death, to each of their three children, if they survived their parents, and if they did not, then to the heirs of the deceased child. One of the three children having deceased, leaving two heirs, the mortgagor and mortgagee entered into a new agreement, by which these heirs were to receive less than they were entitled to under the mortgage; *Held*, that the effect was to create a trust in the grantee of the real estate and to vest in each of the children of the settlor a right to the sum of $1000.00, of which they could not be divested without their consent; and that the new agreement was inoperative and void.

2. MORTGAGE, FORECLOSURE OF. A man made a voluntary conveyance of real estate in trust for himself, his wife and children, and the trustee executed a mortgage back to him, his heirs and assigns, to secure the performance of the trust, for the benefit of all the *cestuis que trust*; *Held*, that subsequent to the decease of the settlor and his wife, the heirs of a deceased child could maintain a petition in common form in their own names to foreclose the mortgage, although their claim was disputed and there was no assignment of the mortgage to them.

3. PARTIES. The administrator of the settlor's estate and the two surviving children should have been made parties; and an amendment was allowed that they might be joined.

PETITION to foreclose a mortgage. Heard on petition, answer and amended answer, traverse to the answers, and the report of a master and exceptions thereto, at the December Term, Windsor County, 1886, ROWELL, Chancellor. Exceptions overruled; report of master accepted and confirmed; petition dismissed; exceptions by petitioners.

2

Sargent *v.* Baldwin.

The condition in the mortgage is set out in the opinion. One part of the written agreement of February 17, 1879, signed by Thomas Williams and A. F. Baldwin, was in effect, that, as Maria A. Sargent, daughter of said Williams, had deceased, the payment of one thousand dollars mentioned in the mortgage and to be made to said Maria, etc., was to be changed as follows: Said Baldwin was to hold in trust the sum of three hundred and fifty dollars for Alice J. Sargent, granddaughter of said Williams, and pay the interest to her annually, except the first year. He was also to hold three hundred and fifty dollars in trust for said Carrie B. Sargent, and pay the interest to her after she became of age. He was also to hold three hundred dollars and give fifty dollars to each of six grandchildren on their becoming of age.

The petition set out the condition in the mortgage that said Baldwin was to pay $1,000 to Maria A. Sargent and in case of her decease, was to pay the sum to her heirs; that said Maria A. had deceased prior to the death of said Thomas Williams, and his wife had deceased in July, 1884; that the petitioners are the heirs of said Maria A.; and the prayer was " that the equity of redemption of the said Albert F. Baldwin in the premises may be foreclosed agreeably to the act to diminish the expenses of foreclosing mortgages in equity."

*French & Southgate* and *Geo. L. Fletcher*, for the petitioners. The petitioners can foreclose the mortgage by petition under the statute. Rev. Laws, Sec. 760; *Wood* v. *Adams*, 35 Vt. 300; *Sprague* v. *Rockwell*, 51 Vt. 401; *Babbitt* y. *Bowen*, 32 Vt. 437; *Richardson* v. *Wright*, 58 Vt. 367. The petition is properly brought in the name of the petitioners alone; for their interest is wholly distinct. *Belden* v. *Manley*, 21 Vt. 550; *Keyes* v. *Wood*, 21 Vt. 331; *Wright* v. *Parker*, 2 Aik. 212; 1 Jones Mort. Sec. 821. The same principle applies to the holder of railroad bonds. *Miller* v. *Rut. & Wash. R. Co.* 40 Vt. 399; *Sewall Brainerd*, 38 Vt. 364. A third person can maintain an action in his favor on a promise to another for his benefit. *Schemer-*

*horn* v. *Vanderhoyden*, 1 Johns. 139. The writing or agreement between Baldwin and Thomas Williams of February 17, 1879, can have no effect upon the rights of the petitioners under the mortgage. " Where a right is acquired to one person by the agreement of two others, such right cannot be afterwards defeated by the act of the parties originally contracting." Pothier Ob. Sec. 3 (a) p. 36.

"The law presumes the acceptance of a gift by a donee when it is unaccompanied by any condition to be performed by the donee." Ross J., in *Blanchard* v. *Sheldon*, 43 Vt. 512 ; *Howard* v. *Savings Bank*, 40 Vt. 597. In the last case the deposit of money in a bank in the name of a third person, the depositor retaining the bank book, was held to be a perfected gift and that the " donor had no power to recall the gift." It was held in *Mason* v. *Hyde*, 41 Vt. 232, where a soldier on enlisting received a town order for his bounty, payable to his son, if he should live to become of age, and if not, to his wife, that the title to the order vested in the son. See *Pope* v. *Savings Bank*, 56 Vt. 284.

If this was a gift from Mr. Williams it was a perfected one and could not be changed by him. There was a delivery of the property and an acceptance is presumed. Pothier Ob. Sec. 3, 35 ; 2 Kent Com. 591. The new agreement cannot change the condition of the mortgage. It does not in terms refer to the mortgage ; it has no seal, witness or acknowledgement and never was recorded. A contract under seal cannot be changed by parol contract. *Sherwin* v. *R. R. Co.* 24 Vt. 347 ; *Patrick* v. *Adams*, 29 Vt. 376. A discharge of a mortgage at common law must be by deed of release or quit claim. 2 Jones Mort. Sec. 972. A deed of defeasance must be of as high a nature as the deed itself. 1 Jones Mort. Sec. 244. Blanks left in a deed or mortgage cannot afterwards be filled by parol authority. 1 Jones Mort. Sec. 90 ; *Berwick* v. *Huntress*, 53 Me. 89 ; *Wallace* v. *Harmstead*, 15 Pa. St. 462.

Sargent *v.* Baldwin.

*C. B. & C. F. Eddy*, for the defendant.

The mortgage conveyance is solely to Thomas Williams, his heirs and assigns. There has been no actual or equitable assignment to the petitioners. The heirs and personal representative of Williams were necessary parties. The personal representative only can discharge or assign the mortgage. Baldwin having derived no advantage by the new agreement, and having in "entire good faith" disposed of and paid out the $1,000 under it, before he had notice that the petitioners would claim otherwise than by this agreement, it would be inequitable that he should be subjected to the decree prayed for.

It is evident that the petitioners, who are not mortgagees nor assignees nor the owners of the legal estate in the premises, are not entitled to a decree of foreclosure. "The foreclosure of a mortgage by a person not the mortgagee where no assignment has been made, is absolutely void." *Bolles* v. *Carli*, 12 Minn. 113 ; *Lyford* v. *Ross*, 33 Me. 197. If in this case with the allegations and lack of allegations in the petition, a decree of foreclosure should be entered, and the defendant should not make payment and the decree should be recorded, in whom would the title be vested? Clearly not in the petitioners, but in the estate of Thomas Williams. For aught that is alleged or shown the interest in the estate of said Williams and of his two other heirs still continues. Such a mortgage as this in the absence of an actual or equitable assignment, cannot by the statutory petition be foreclosed by anyone save the personal representative of the deceased mortgagee.

Certainly it cannot be foreclosed in detail by independent petitions of several persons having an interest in the entire condition. 2 Jones Mort. (3d ed.) Sec. 1367 ; *Davis* v. *Hemingway*, 29 Vt. 438 ; *Somers* v. *Skinner*, 16 Mass. 348, 356.

The opinion of the court was delivered by

TYLER, J. The material facts in this case as reported by the master are as follows : On the 9th day of April, 1877,

Thomas Williams and his wife executed and delivered to the defendant Baldwin a deed of certain real estate situated in Chester, and on the same day Baldwin executed and delivered to Williams a mortgage deed of the same lands, conditioned, first, for the support of said Williams and wife during their lives and for the payment to them of a small sum yearly, and then as follows :

"And after the decease of said Thomas Williams and Betsey Williams, within a reasonable time pay $1,000 to each of their heirs ; that is, $1,000 to their daughter, Laurenza S. Baldwin, wife of Albert F. Baldwin, $1,000 to their son, Warren C. Williams, and $1,000 to their daughter, Maria A. Sargent, wife of E. P. Sargent; and in case either of the said heirs are not living at the decease of the said Thomas and Betsey, pay to their heirs the said $1,000."

Maria A. Sargent died in August, 1878. The petitioners, Alice J. and Carrie B., are her heirs. On February 17, 1879, Williams and Baldwin entered into a new agreement in writing by which they intended to change that part of the condition in said mortgage which relates to these petitioners, and intended and expected that the new agreement would so far take the place of and supercede the condition in said mortgage. Williams and wife died in July, 1884.

The master finds, that Williams and Baldwin acted in good faith in making the new agreement ; that the petitioners did not consent to it and had no knowledge of it ; that it was not beneficial to them, as under it they would have been entitled to a considerably less sum than under the mortgage.

I. The case presents the question as to the rights and power of the mortgagor and mortgagee, by a parol agreement, to alter the terms and conditions of the mortgage so far as the heirs of Mrs. Sargent are concerned, the defendant claiming it was within the power of Williams to make the change evidenced by the new agreement and the petitioners claiming it was inoperative as to them.

The law relating to voluntary scatlements has been the subject of wide discussion in English and American courts. An early case, referred to by text-writers, is *Villers* v. *Beaumont*, 1 Vern. 99, decided in 1682. In that case William Beaumont, who was entitled to a lease of a hospital in Leicester for three lives, a short time before his death, by a little scrap of paper at an ale-house, but under his hand and seal, settled the term upon the plaintiffs, who were his cousins, to the intent to pay · his debts, and gave the surplus to them. Afterwards being dissatisfied with the settlement, he made his will in writing, whereby he devised the term, subject to the payment of his debts, to the defendant. After arguments Lord Chancellor NOTTINGHAM said : " There is no color in this case. If a man will improvidently bind himself by a voluntary deed and not reserve a liberty to himself by a power of revocation, this court will not loose the fetters he hath put upon himself, but he must lie down under his own folly ; for if you relieve in such a case you must consequently establish this proposition, viz. : *That a man can make no voluntary disposition of his estate but by his will only, which would be absurd.*"

A voluntary settlement binds the party making it, nor can he alter it, how much so ever he may be inclined to do so, unless there be a power of revocation. *Ambler*, 266.

*Boughton* v. *Boughton*, 1 Atk. 625, was a case where a voluntary deed, not at all unfair, which was kept by the person making it and never cancelled, was sought to be set aside by a subsequent will. The Lord Chancellor said : " The will is no more than voluntary, and as there is no case where a voluntary settlement has been set aside by a subsequent will, this no longer remains a question."

In *Curtis* v. *Price*, 12 Ves. 103, the court said : " It is void only against creditors ; and only to the extent in which it may be necessary to deal with the estate for their satisfaction

it is as if it never had been made. To every other purpose it is good. Satisfy the creditors and the settlement stands."

The strictness of the ancient doctrine was somewhat modified by later decisions, in some of which it was held that the absence of a power of revocation was to be regarded as strong evidence that the settlor did not understand the transaction when there was no apparent motive for an irrevocable gift. *Bridgman* v. *Green*, 2 Ves. 627; *Huguenin* v. *Baseley*, 14 Ves. 273. But in the latter case Lord ELDON said: " Repeating therefore, distinctly, that this court is not to undo voluntary deeds." * * * In other cases it was held that the absence of a power of revocation was only a circumstance to be considered and of more or less weight according to the other circumstances in the case. *Toker* v. *Toker*, 3 De G. & S. 487.

In *Ellison* v. *Ellison*, 6 Ves. 656, Lord ELDON said; " But if the trust is perfectly created, so that the donor or settlor has nothing more to do, and the person seeking to enforce it has need of no further conveyance from the settlor, and nothing is required of the court but to give effect to the trust as an executed trust, it will be carried into effect at the suit of a party interested, although it was without consideration and the possession of the property was not changed; and this will be true although the person who is intended to be benefited has no knowledge of the act at the time it was done, provided he accepts and ratifies it when he is notified. But if there is any fraud, accident, or mistake, in the transaction, courts will not carry a voluntary trust into execution." Perry in his work on Trusts, section 98, adopts this declaration as the law on this subject, and cites numerous authorities in support of it.

In *Garnsey* v. *Mundy*, 24 N. J. Eq. 243, it was held that a voluntary trust-deed which reserves no power of revocation and was made with a nominal consideration and without legal advice as to its effect, should be set aside on the application of the settlor, there being evidence that its effect was misunderstood both by the settlor and her relatives who induced her to make

the conveyance, and that in some particulars it defeated the real intentions of the parties. This case is reported in Vol. 13, Am. Law Reg. with learned notes by Mr. Bispham, in which he reviews the leading cases on this subject, some of which are above referred to, and from which he draws the following conclusions :

" Where there is a deliberate gift, with full knowledge of the consequences of the act, made by a person *sui juris*, the absence of a power of revocation is not *prima facie*, enough to set the instrument aside. The absence of motive is immaterial, if an intent to make an irrevocable gift is apparent; and, it is submitted, that this intent is sufficiently proved, in the first instance, whenever a person of sound mind and *sui juris* executes an instrument of whose contents he has been informed."

\*    \*    \*

" It is a well settled rule  \*  \*  \* that an executed, voluntary settlement, not tainted with fraud, or affected by mistake, is binding on the settlor. No matter how unfortunate, unjust or absurd such a settlement may unexpectedly prove to be, the general rule, above stated, is certainly beyond dispute." See *Kekeaich* v. *Manning*, 1 De G. M. & G. 176 ; 1 Hill on Trustees, 140.

Upon a careful examination of this subject we have been unable to find any case where equity has set aside a voluntary settlement except on the application of the settlor, and then only on the ground of fraud, or where the settlement was unadvised and improvident, or contrary to the intention of the settlor.

In *Salisbury* v. *Bigelow*, 20 Pick. 174, the court said : " It seems to be a well settled principle of equity, that when a voluntary settlement is fairly made it cannot be annulled by the settlor, unless a power of revocation be reserved for that purpose." See also *Stone* v. *Hackett*, 12 Gray, 227 ; *Viney* v. *Abbott*, 109 Mass. 300 ; and *Sewall* v. *Roberts*, 115 Mass. 262.

All questions as to voluntary, executed trusts, their creation without pecuniary consideration and without notice to the *cestuis que trust*, were fully considered and settled by this court in *Barber, Adm'r,* v. *Thompson,* 49 Vt. 213, a case very similar in its material facts to the present one, and in which the learned judge in his opinion recognized and reaffirmed the well settled law on this subject.

In a recent case the Court of Appeals of New York held that : " When the owner of lands deeds them and takes from the grantee a mortgage securing the payment of an annual sum to his granddaughters or their guardians until they shall arrive at age, a valid irrevocable trust is thereby created, and the trustee has no power to annul or change the conditions of the trust, and the execution of a discharge of the mortgage by the trustee in contravention of the trust and without its fulfillment, is, as to such trust and the interests of the beneficiaries, unauthorized and void." *McPherson* v. *Rollins,* Cent. Rep. vol. 9 832 ; *Martin* v. *Funk,* 75 N. Y. 134.

The obvious purpose of Thomas Williams in making the conveyance of his real estate to his son-in-law, Baldwin, was to provide a maintenance for himself and wife during their lives, and upon their decease to settle the sum of one thousand dollars upon each of his three children, Laurenza S. Baldwin, Warren C. Williams and Maria A. Sargent, and upon the heirs of his children, respectively, if the latter should decease before Williams and his wife. The mortgage was given by Baldwin to Williams to secure the fulfillment of that purpose, and the two instruments, which were executed at the same time, must be regarded as constituent parts of one transaction. They contained no power of revocation, and when delivered and recorded, Williams was divested of the title to the real estate in question beyond recovery, provided Baldwin performed the conditions of the mortgage, and the liability of the mortgagor was fixed to perform those conditions.

The effect of this transaction was to create a trust in Baldwin and to vest in the three children of the settlor a right to the sum of one thousand dollars each, a right of which they could not be divested without their consent. It was a voluntary conveyance in trust, fully executed and completed, for the settlor and his wife and the beneficiaries named. It was not tainted with fraud, and there is no claim that it was made under any misapprehension as to its legal effect.

The right of Maria A. Sargent to her sum of one thousand dollars, which was in legal effect carved out of her father's estate and deposited in the hands of the trustee for her, by the terms of the trust, vested in her and her heirs without any provision for a defeasance.

The result is we hold that the agreement of February 17, 1879, was inoperative to disturb the trusts created April 9, 1877, or the rights of the *cestuis que trust* under the same.

II.   The mortgage was made to Thomas Williams and his heirs and assigns; but it was for the benefit of all the *cestuis que trust*, as the promise contained in the condition thereof was to them. When the several sums became due to them, on failure of the defendant to make payment they could avail themselves of the mortgage security.

In *Keyes* v. *Wood et al.* 21 Vt. 331, it was held that where notes secured by mortgage were assigned by the payee, the mortgage in equity went with them, even though the assignee, at the time of the assignment, did not know of the mortgage security, and that on an assignment of a part of the notes a *pro rata* portion of such security accompanied them. See also *Belding* v. *Manly*, 21 Vt. 551.

In *Sewall* v. *Brainerd*, 38 Vt. 364, and *Miller* v. *R. & W. R. R. Co.* 40 Vt. 399, it was held that matured coupons of a railroad company mortgage bonds were a constituent part of the mortgage debt, and that an assignment of them carried with it by necessary implication an interest in the mortgage

security. The case at bar presents as strong a right in the petitioners, for here the promise is to certain persons named or their heirs.

We have no question as to the right of the petitioners to maintain this form of action. A petition to foreclose a mortgage is as proper in disputable as in indisputed cases. *Wood* v. *Adams*, 35 Vt. 300.

We are of opinion, however, that Laurenza S. Baldwin, Warren C. Williams and the administrators of Thomas Williams' estate, having an interest in the mortgage, should be made parties to the proceeding. The decree of the chancellor dismissing the petition is reversed and cause remanded to the Court of Chancery with right in the petitioners to ask leave to amend the petition by bringing in the persons above named as parties thereto. When the petition is so amended the petitioners may have a decree according to the prayer of the petition as provided in the mandate.