King *v.* Whaley.

[ONONDAGA GENERAL TERM, October 5, 1869. *Bacon, Mullin* and *Morgan,* Justices.]

———•◦•———

KING *vs.* WHALEY and ROBINSON, impleaded, &c.

A testator devised his lands to his widow for life, with remainder to his nephew, W. S. V., his heirs and assigns forever. His widow afterwards married A. S., and W. S. V. thereupon conveyed his remainder, in trust, to F. S. for the sole use and benefit of A. S. during his natural life, in case he survived his wife; and directed in case of her sickness or inability, and more than the use of the lands should be required for her support, that F. S. might sell portions of such lands, sufficient to support and maintain her; and after her and her husband's death, the said lands, or such parts thereof as should then remain unsold, to the heirs of W. S. V. and F. S. in equal parts, one moiety thereof to the heirs of each; or in the same proportion to their children, if the parents should then be living.

*Held,* 1. That the trusts were valid, and the deed effectual to dispose of the estate in remainder.

2. That if A. S. survived his wife it would operate to create a valid trust in F. S. to receive the rents and profits of the lands and pay them over to A. S. during his life.

3. That the authority conferred upon F. S. to dispose of portions of the lands for the support and maintenance of the wife of A. S. in case of her need, was a *general power in trust,* and the remainder in fee, being limited upon the two lives in being of A. S. and wife, was effectually granted to the children or heirs, as the case might be, of W. S. V. and F. S., subject only to the execution of the power.

Where the ultimate remainder in fee is limited upon two lives in being at the time of the grant, it will not be defeated by the creation and failure of an intermediate trust estate.

In an equity action, the court will not reverse the judgment on account of the admission of improper evidence, if from the whole case it appears that such evidence could not have changed the result.

King *v.* Whaley.

*It seems* where one of several owners enters into the actual possession of land under a deed which purports to convey the entire interest, it will not be presumed, without otheraevidence, that his possession is hostile to the remaining owners.

The declarations of the tenant, in such a case, though perhaps unnecessary, are competent evidence to restrict his claim and show that it is not adverse.

APPEAL from a judgment entered upon the report of a referee.

Certain premises were originally owned by William Vizor, who by his last will and testament, bearing date April 6, 1830, devised the same to his wife Nancy Vizor, for life, and after her death, to his nephew William S. Vizor, his heirs and assigns forever. The testator died in December, 1832. Prior to April 9, 1835, the widow married Amasa Sheldon; and on that day William S. Vizor and wife executed and delivered to Fenner Sheldon a conveyance, *in trust*, for the sole use, benefit and behoof of Amasa Sheldon, husband of Nancy Vizor, during his natural life, "in case he should survive his said wife Nancy; and in case of the sickness or inability of the said Nancy, and more than the use of the premises: * * * should be required for the support of the said Nancy, then and in that case sufficient of the said premises * * may be sold for the comfortable support and maintenance of the said Nancy; what shall be required over and above the use of the residue for her support, and after the death of the said Amasa Sheldon and Nancy his wife, the said premises or such part thereof as shall then be unsold, in equal parts to the heirs of Fenner Sheldon, party of the second part, and the heirs of William S. Vizor, party of the first part, in equal portions; that is, the one moiety thereof to the heirs of the said Fenner Sheldon, and the other moiety thereof to the heirs of the said William S. Vizor."

It was further provided, that in case either Fenner Sheldon or William S. Vizor should be living at the death of

the said Amasa Sheldon and Nancy his wife, then the premises were to go to their children, "in the same proportion as to the heirs, were they or either of them deceased."

Upon the trial, it was shown that the testator died in 1832, and Fenner Sheldon died in 1853, leaving heirs; that Amasa Sheldon and his wife died in 1857, without having required a sale of any portion of the premises for the support of Nancy, as authorized by the deed of trust; and that William S. Vizor was living at the time of the death of Amasa Sheldon and Nancy his wife, and had three children, Joel Vizor, Lydia Vizor and William Vizor.

Joel and Lydia Vizor, by a conveyance executed in October, 1862, conveyed their interests to Albert J. Wilkinson, who was not a party to the suit, but after the report of the referee he appeared by E. L. Stevens, his attorney, and consented that a judgment might be entered upon the report of the referee, without further notice. It was suggested on the trial, that he had reconveyed his title to Joel and Lydia Vizor, but the reconveyance does not appear in the case.

The action was for a partition of the premises, and was referred to a referee, who found that Charles S. King, Ada Ann King, and May S. King were each seised in fee of one-seventh of an undivided half of said premises, and James S. Whaley of five-sevenths of an undivided half thereof; and the three children of William S. Vizor, viz., Joel, Lydia and William, or the grantees of the two former, Joel and Lydia, provided they have not been reinvested with the title, each one-third of an undivided half.

As a partition could not be made, without great prejudice to the rights of the parties, the referee directed a sale, and a judgment declaring the rights of the parties as above set forth, as far as the same had been thus ascertained, and also requiring the judgment to be suspended until the necessary parties could be brought in and given an oppor-

tunity to set forth their rights and interests and have the same duly ascertained and declared, to the end that the whole controversy might be determined. After the appearance of William S. Vizor, Joel Vizor, Lydia Vizor and Albert J. Wilkinson, and with their consent, a judgment was duly entered, declaring the rights of the parties as follows: To the plaintiff, one-third of one-seventh of one-half; to Ada Ann King, one-third of one-seventh of one-half; to May S. King, one-third of one-seventh of one-half; to Mary Corcoran, one-seventh of one-half; to James S. Whaley, five-sevenths of one-half; to Joel Vizor, one-third of one-half; to Lydia Vizor, one-third of one-half; to William Vizor, one-third of one-half. And the judgment then proceed to direct a sale and further proceedings as is usual in cases of partition.

It appeared on the trial, that *James S. Whaley* took title to five-sevenths of one-half through *Robert W. Jones*, by deed bearing date April 1, 1864. Jones took title from Charles Stokes and William V. Sheldon, December 27, 1859, and acquired only the legal interest in five-sevenths of one-half unless he had also acquired the interest of the three Vizors, which does not appear. He went into possession after the conveyance to him.

*It also appeared that William S. Vizor, by quit-claim deed bearing date July 6,* 1867, for the nominal consideration of $560, conveyed the premises to *Charles Stokes*, and whatever interest *William S. Vizor* had in the premises passed to Jones by the subsequent deed to him of December 27, 1859.

While *Jones was in possession he made certain statements* or admissions as to the extent of his title. The plaintiff inquired of William V. Sheldon what title Jones claimed to own. The witness answered that he never heard that he claimed to own the rights of the Kings. The witness was then asked what interest Jones paid for, and he answered

that he did pay for that interest, but they were deducted out. An objection was taken to the evidence.

Edward L. Stevens was then sworn for the plaintiff, and testified that he talked with Jones about his title.

" *Q.* What rights did he claim? Objected to as inadmissible, improper, irrelevant and immaterial; no evidence of title for the plaintiff or others ; not proper evidence to impeach, destroy or take away title. Objection overruled. Defendant excepted. *A.* He did not claim to have this right. *Q.* State what he claimed. Objected to as last before. Objection overruled, and the defendant excepted. *A.* He claimed all but the heirs of Susan and one-seventh to Stokes; Corcoran another seventh; there were two-sevenths that he did not claim to own, and had not paid for." Other similar evidence was given, under objection and exception.

The defendants then moved for a dismissal of the complaint, upon the following grounds:

1st. The plaintiff has shown no right, title or interest in himself to the premises in question.

2d. The trust deed from William S. Vizor and wife to Fenner Sheldon, as trustee, conveyed no right, title or interest to the plaintiff or any other party.

3d. There is no evidence of any right, title or interest, jointly or as tenants in common with the defendants, and none that impeaches the defendants' rights.

4th. The fee of the premises in question was not conveyed by said trust, and was still in William S. Vizor, and by transfer to Stokes, Stokes became the owner in fee; and through Stokes the defendants Robinson and Whaley became the owners of the title of William S. Vizor.

The motion was denied, and the counsel for the defendants Robinson and Whaley duly excepted to the decision of the referee, and appealed from the judgment.

*Johnson & Prescott*, for the appellants.

*Pomeroy & Southworth*, for the respondents.

*By the Court*, MORGAN, J. It appears from the case, that all proper persons have been made parties, since the report of the referee, and consent to the judgment, except the defendants Whaley and Robinson. Robinson is in possession under a parol contract of purchase, and having paid the consideration in full, is the equitable owner of whatever title Whaley acquired by his deed from Jones.

These two defendants represent the same interest; and although it does not appear that Whaley has acquired the legal title of the three Vizors, who each takes one-sixth, as children of William S. Vizor, under the trust deed, and to whom that interest is awarded by the judgment, the case shows that Whaley, while in possession, claimed to have acquired their interests; but as he makes no objection to the form of the judgment or finding of the referee in respect to these interests, and all parties seem to be satisfied with the decision of the court in respect thereto, it is unnecessary to open the litigation again, in order to discover the true state of the legal title as between these several parties who have appeared and assented to the judgment, and as to which no objection is taken by the appellants.

Assuming, therefore, that the judgment is satisfactory to all the parties except the defendants Whaley and Robinson, and that they only object to the conclusions of the referee as to the operation of the trust deed, and his decision as to the admission of evidence of the declarations of Jones while in possession of the premises, it will only be necessary to examine the questions arising out of such objections; and if the referee was right in his decision as to the validity of the trust deed, and as to the admission

of the evidence objected to, the judgment being satisfactory in other respects, should be affirmed.

If the trust deed, so called, was invalid, the title remained in the creator of the trust, *William S. Vizor*, and by his conveyance to Stokes, and the latter's conveyance to Jones, the legal title was vested in Jones, and finally conveyed to Whaley by his deed of April 1, 1864.

When William S. Vizor executed the *trust deed*, the title was in Mrs. Sheldon for life, and the remainder in William S. Vizor, to whom it was devised by the will of William Vizor. Of course William S. Vizor had no interest in the land until the termination of the life estate; and his deed of trust was inoperative during the life of Mrs. Sheldon, except so far as it authorized a sale of the land for the support and maintenance of Mrs. Sheldon, in case she required it for that purpose. But it effectually disposed of the remainder, or what there was left of it, to the children or heirs of Fenner Sheldon and the said William S. Vizor, after the death of Amasa Sheldon and his wife. If, however, Amasa Sheldon had outlived his wife, the deed of trust vested in him a life estate beyond the life estate of Mrs. Sheldon created by the will.

If the trust deed is valid, it operated to enlarge the intermediate estate by extending it to two lives instead of one. But upon the termination of these two lives in being, the remainder became actually vested in the children or heirs, as the case might be, of William S. Vizor and Fenner Sheldon. It is clear, therefore, that the absolute power of alienation was not thereby extended beyond two lives in being.

But the husband of Nancy Vizor took no title to the lands during the life of his wife. The will of William Vizor had effectually vested the life estate in his widow, who afterwards married Amasa Sheldon. The trustee named in the trust deed (Fenner Shelden) was however empowered to sell a portion of the land for the benefit of

Mrs. Sheldon in case of need; and such a sale, if legal, would have defeated the title to the remainder *pro tanto*, leaving the remainder undisposed of to pass to the heirs or children of William S. Vizor and Fenner Sheldon after the termination of the life estate.

This trust, I think, was valid. In case Amasa Sheldon survived his wife, it operated to create a trust in Fenner Sheldon to receive the rents and profits of the land and pay them over to Amasa Sheldon during his life, and upon the death of Amasa Sheldon the trust would cease and the property at once vest in the children or heirs at law of William S. Vizor and Fenner Sheldon. (1 *R. S.* 728, § 55, *p.* 730, § 67.) This trust deed also contained a general power in trust in Fenner Sheldon to dispose of the land or portions of it for the benefit of Mrs. Sheldon, and the remainder in fee was limited upon the two lives of Sheldon and wife, and was effectually conveyed to the children or heirs of Fenner Sheldon and William S. Vizor, subject to the execution of the former. (1 *R. S.* 729, § 58.)

In fact Fenner Sheldon died in 1853, several years before the termination of the life estate of Mrs. Sheldon, who died in 1857; but whether before or after the death of her husband, does not appear, nor is it material. If he had survived his wife, the trust would not have been suffered to fail for want of a trustee. (1 *R. S.* 730, § 68.) The question is not affected by the order of events; nor will the estate in remainder fail because of an intermediate trust estate, which failed; as the remainder in fee was not limited upon the trust estate, but upon the termination of the two lives in being at the time of its creation. (1 *R. S.* 723, § 15.)

I come to the conclusion, therefore, that the referee was right in his construction of the will and the trust deed; and the only remaining question is whether the defendants' exceptions to the rulings of the referee in the admission of evidence, are well taken.    ..

King *v.* Whaley.

This being an equity action, it is clear, I think, upon the authorities, that the court will not reverse the judgment, although the evidence was inadmissible, if from the whole case it appears the evidence could not have changed the result.

The evidence tended to show that Jones, the predecessor of Whaley, while in possession, claimed the whole interest except the right of the Kings and Mrs. Corcoran. This claim would exclude the interests awarded to Joel, Lydia and William Vizor, which included an undivided half of the premises, and would show an adverse possession, as against them. But no objection is taken to this part of the judgment. As to the Kings and Mary Corcoran, the evidence tended to show that Jones did not claim their interest. The presumption is, that Jones occupied in accordance with the title conveyed to him, and not adversely to the title of the Kings and Mrs. Corcoran, unless he claimed title through the deed of William S. Vizor, which was doubtless executed upon the theory that the trust deed was invalid. But as that deed conveyed no title, and it does not appear that Jones entered under it, the evidence was, I think, admissible to show that his entry was not in hostility to the title of the Kings and Mrs. Corcoran. Perhaps the evidence was entirely unnecessary, as I think the law would presume that he entered into possession under the legal title conveyed to him, and not in hostility to others who claimed an undivided interest under the same title.

It is a mistake to suppose that the evidence was given to upset or overthrow Whaley's title. He took a conveyance from Jones, and presumptively entered into possession under the legal title which was in Jones, before his conveyance. The legal title of Jones, we have already seen, did not exclude the title of the Kings and Mrs. Corcoran, nor did he claim it did. Now while it is doubtless true that one tenant in common may oust his co-tenant by an

adverse claim and possession, there is no evidence in this case of such adverse claim or possession. The referee, therefore, must have come to the same conclusion without the introduction of the evidence of Jones' declarations. The most that can be said is, that the evidence was unnecessary, and did not change the result; but as it tended merely to prove what the law would presume without it, the exception is unavailable to the defendant, and furnishes no ground for a new trial.

In my opinion the judgment should be affirmed, with costs to be paid by the appellants.

Judgment affirmed.

[ONONDAGA GENERAL TERM, October 5, 1869. *Morgan, Mullin* and *Bacon,* Justices.]