Joram Petrie died on the 16th of October, 1869, and at that time was owner of record of lands since appropriated to the use of the petitioner. Fanny P. Cottle and Charles L. Petrie are the only children and heirs at law of Joram Petrie, and their claim to the compensation awarded for the taking of the lands in question is valid unless overcome by that of Octavius O. Cottle. He claims under a paper purporting to be a deed of those lands, signed by Joram Petrie and Frances F., his wife, bearing date June 7, 1861. The instrument is neither witnessed nor acknowledged, and the question principally litigated before referee Nichols related to its delivery. He found that "it was *Page 345 
never delivered by the said Joram Petrie and wife to the said Octavius O. Cottle, or to any person for or in his behalf." This finding has been adopted by the Special Term, and upon appeal, by the General Term of the Supreme Court. It was a question of fact to be answered by those courts upon conflicting evidence, and cannot be determined upon this appeal. (Code § 1337.) We have, however, read and weighed the evidence, but in view of the concurring decisions in favor of the respondent, already had, it is enough to say that we find sufficient to sustain the finding of the referee and Special Term.
It is urged, however, in behalf of the appellant Cottle, among other things that the referee erred in striking out his testimony as to depositing the instrument in question with Mrs. Petrie, and excluding his evidence as to what he said to her on that occasion. She was the wife of Joram Petrie, and named as grantor to Cottle in the deed. If the deed took effect, it barred her right of dower. She was dead at the time of Cottle's examination, and the question is whether the case is thus brought within the prohibition of section 829 of the Code. The learned counsel for the appellant dwells upon the fact that "her possiblity of dower was extinguished by her death," but this seems unimportant. The claim of title now made by the appellant assumes that it was extinguished by the instrument executed by her, and the delivery of which he asserts, so that at her death she had no claim. It is true an inchoate right of dower is neither an estate nor interest, but only a possibility. But it is of value, and may give the wife an estate upon the death of her husband, without any new act to be done or right to be acquired. If she did not join in the deed her right would be paramount to that of her husband's grantee, and as against the appellant she would have her dower. But it does not appear that any interest passed from her to the respondent, and I do not think that the testimony was properly excluded under section 829 of the Code.
But why were Cottle's declarations to Mrs. Petrie competent? Only as part of the res gestæ — that is, part of the act of handing the deed to Mrs. Petrie. His words would serve *Page 346 
to qualify that act. They might, as the appellant claims, impress upon her the character of a depository. But suppose that to be the relation then constituted between them, it had little to do with the principal question — indeed was of no weight whatever in view of the evidence on which the referee and court held that there had been in fact no delivery of the deed by the grantor to Cottle. The act and the words were Cottle's alone — his declarations — and could have no tendency even to establish the vital circumstance on which his lawful possession of the deed depended. The evidence was not offered to that end. It came up in answer to testimony given by the other party, that after the death of Mrs. Petrie, and also during her life, the deed was in the room occupied by herself and husband, and was to show that she had received it from Cottle. The testimony, however, of Mr. Cottle, that he deposited the deed with Mrs. Petrie, was before the Special and General Terms, and although excluded by the referee, was for their consideration. His decision was neither final nor in any respect binding upon either court. It was his opinion merely reported with the evidence. Weighed by the Special Term, the evidence offered was found insufficient to change the result. The testimony excluded, and not before the court, is such as would have come from the answer of the claimant to the question, "What did you say to her (Mrs. Petrie) when you deposited it (the deed) with her?" Such declaration, whatever it might have been, must in any view of the case be entitled to little weight, and under the testimony actually before the court, and with reference to the question to be decided, was of inappreciable importance. "Was the deed actually delivered by the grantor to Cottle," and, "Had it ever taken effect," were the questions to be decided. As to each, the burden was on Cottle. He entirely failed to maintain it. The facts and circumstances which compelled the conclusion to the contrary were overwhelming, and of such preponderance that the declaration of the party in interest, testified to by himself, could be of no importance. So the judge at Special Term held upon the evidence, and the General Term affirmed that conclusion. In *Page 347 
the absence of substantial reason against its decision, it should stand. The rule is well settled that in an equity case a new hearing will not be granted, or judgment reversed merely on the ground that proper evidence was rejected at the trial, if on all the facts and circumstances the court is satisfied the result ought not to have been different if such testimony had been received. (King v. Whaley, 59 Barb. 71; Apthorp v.Comstock, 2 Paige, 482.) We have examined the other points made in behalf of the appellant, but find none which either require discussion, or indicate error that, under the rule above stated, would avail the appellants.
Second. The board of supervisors and the city of Buffalo were claimants, as lienors, for unpaid taxes. The claims were disallowed by referee Nichols upon the ground that the description in the tax assessment proceedings was so vague and uncertain that the premises intended to be affected could not be located therefrom. Upon a further reference of this matter to referee Gorham, he came substantially to the same conclusion, and held that, if the claimants were proceeding to get the property by ejectment, or in any other way wrest it from the owners by virtue of a tax-deed, he should feel bound to hold that the description was so indefinite that the tax-deed could not be sustained, but concluded that inasmuch as Cottle had paid other taxes under the same description without objection, he was estopped from claiming in this proceeding that the tax-scrip and taxes proven were not a lien upon the fund, by reason of the imperfect description of the land. The General Term held with the first referee.
The learned counsel for the appellant, the board of supervisors, now argues, first, that the premises are properly described. The following is the description in the assessment-rolls and subsequent proceedings:
----------------------------------------------------------------------------------------------------------------------------------------------------
 | | | | | | | Distance from | | Tax.
 | | | | | | | what street. | |-------------
Outer Lot. | Block. | Feet Front. | Feet Deep. | Line. | Name of | Side Street. |-------------------------------| Total Val. | Dol. | Cts.
 | | | | | Street. | | Feet. | Course. | Street. | | |
— ---------|--------|-------------|-------------|---------|------------|----------------|---------|----------|----------|-------------|-------------
93 | | 65 | 185 | N.E. | Exchange. | S. | 207½ | E. | Beak. | 8,500 | 44 | 10
 | | | 30 | rear. | | | | | | |
----------------------------------------------------------------------------------------------------------------------------------------------------
 *Page 348 
As described in the petition of the railroad company for acquiring the lands, and in the deeds of record, it is as follows:
"All that certain piece or parcel of land situate in the city of Buffalo, county of Erie, and State of New York, being part of outer lot number ninety-three, and bounded and described as follows: Beginning in the southerly line of Exchange street, at the point of intersection thereof with the easterly line of a lot of land formerly owned by Louis Le Couteulx, now deceased, and which point is supposed to be five hundred and nine and eight-twelfths feet distant easterly at right angles from the easterly line of Washington street; thence south, seventy-six degrees east, along the southerly line of Exchange street, sixty-five feet; thence south, seventy-six degrees and thirty minutes east, one hundred and fifty-nine feet, to the Little Buffalo creek; thence down the said creek, south-westerly, thirty-two feet; thence north, fifteen degrees and forty-five minutes west, one hundred and ninety-four feet, to the place of beginning, containing more or less."
It was the duty of the assessors to designate or describe the land "by boundaries, or in some other way by which it may be known." (1 R.S., title 2, part 1, chap. 13, art. 2.) It is obvious, from a comparison of these descriptions, that they do not in terms agree, and that from the first no suggestion can be derived which would call attention to the other. The testimony of surveyors, given to the referees, sustain the finding that the description for taxation is insufficient to enable any one to locate the land, and that being the case, I am unable to see how proceedings under it can be sustained. It marks the first step and cannot be departed from at any subsequent stage of the procedure. It is intended to be notice to the owner of the burden cast upon his lands, and limits the title of a purchaser whose bid discharges the obligation which the owner neglected to fulfill.
Suppose the railroad company had followed the description contained in the assessment-rolls and tax certificates, could it be pretended that it would satisfy the statute *Page 349 
which requires a description of the real estate sought to be acquired? There is given a front on Exchange street, but no definite courses for the remaining sides of the lot, nor other means of identification, or any lines by which the lot can be inclosed. Therefore it is defective. (In re Application ofN YC. H.R.R.R. Co. to Lands of Ran, 70 N.Y. 191.) An accurate designation or description of the land assessed is equally essential to the validity of the assessment, and without certainty in that respect no foundation is afforded for future action. (Tallman v. White, 2 Comst. 66; Sharp v. Johnson,
4 Hill, 92; Bank of Utica v. Mersereau, 3 Barb. Ch. 531;Peck v. Mallams, 10 N.Y. 509.)
It is, in the second place, claimed by the appellant, the board of supervisors, that a different rule may be applied here; that, inasmuch as the proceeding is not an action in which they assert title to the land, equitable consideration may be let in, and the real owner be estopped by the acts of Cottle, who assumed to be the owner, or the tax upheld upon evidence outside the record, that the land in question was the land intended to be assessed and the taxes fairly represent the burden which the assessors designed for it.
We cannot perceive the force of either suggestion. The money in court stands in place of the land. It has been converted by adverse proceedings, and its proceeds are to be distributed among those parties "owning or interested in the real estate" (Laws of 1850, chap. 140, § 16), and paid as compensation for the real estate taken. (Id.) It has been properly adjudged that Cottle was not the owner, and those who are cannot be affected, even if he could be (Cruger v. Dougherty, 43 N.Y. 107) by his acquiescence in similar irregularities on other occasions. Nor can the claim of the board of supervisors be maintained upon any ground which would be insufficient in a direct proceeding, by them or purchasers under them, by virtue of the assessment, to support a sale of the property, or uphold a tax title. Equity has no function to fulfill in furtherance of claims under statutory proceedings, through which title is divested without the consent of the owner. In such a case there *Page 350 
is no principle upon which it can supply the omission of a step made necessary by statute. Considerations of expediency and convenience would render it impossible, for the inquiry, once entertained, would lead back to the origin of the tax, and its occasion, and other circumstances in regard to which a court of conscience might differ from the tribunal to which by statute these matters have been intrusted. If at law the claimant would be defeated in any attempt to enforce the tax, it would be because it was illegal and void, or the action of the taxing officers erroneous or irregular. The proceedings before us have been properly adjudged to be of that character, and the claim under them has been rejected because the claimants have not shown that they have any lien upon, or interest in, the property in question. It follows, from these conclusions, that the court at Special Term erred so far as it allowed the claim of the county for the tax of 1878, amounting to $56.45, and the claims of the city of Buffalo for tax certificates number five hundred and twenty, for sale of 1879, number five hundred and thirty-four for sale of 1878, number five hundred and thirty-two, for sale of 1877, and local roll number nine thousand seven hundred and thirty-eight, for repairing Exchange street, confirmed May 1, 1879.
The orders of Special and General Terms should, therefore, be modified by striking out the award of $769.60, made to the city of Buffalo on account of the above claims, and also the award of $56.45, made to the county of Erie as above stated, and one-half of the sums so disallowed should be awarded and paid to Fannie P. Cottle, and the other half of said sums should be awarded and paid to Charles L. Petrie, and in all other respects affirmed, with costs to the respondent Charles L. Petrie, to be paid by the appellants, O.O. Cottle and the board of supervisors of Erie county, and without costs in this court to any other person.
All concur, except RAPALLO, J., absent.
Ordered accordingly. *Page 351