## KELSEY *v.* COOLEY *et al.*

(*Supreme Court, General Term, Fifth Department.* October 23, 1890.)

1. EXPRESS TRUST—REVOCATION—WILL.

C. conveyed his estate to his nephew, and took back a mortgage on the realty, payable at his death to his executors, and an agreement for the support of himself and his sister. Subsequently, C. consulted a neighbor about making a will providing for his grand-nephews, and a bond and mortgage from the nephew to C. was made, providing for the payment of interest to C. for life, and the principal, at his death, to the grand-nephews. No consideration passed between the grand-nephews and C. for the bond and mortgage, which were retained by C. The mortgage was afterwards satisfied upon receipt of two notes from the nephew. *Held*, that such mortgage was in the nature of a will; that C. had power to change it in his lifetime; and that he had no intention to, and did not, create a trust in favor of the grandchildren.

2. EQUITY—APPEAL—HARMLESS ERROR.

In an equity suit there can be no reversal because of errors which would not have changed the result.

3. WITNESS—COMPETENCY—TRANSACTIONS WITH DECEDENT.

A party is a competent witness under Code Civil Proc. N. Y. § 829, when she is not examined in her own behalf, and is not interested in the subject upon which she testifies.

Appeal from equity term, Livingston county.

Action by Otto Kelsey, administrator of George M. Bloodgood, against H. H. Cooley and others, to set aside the discharge of a mortgage, and to declare a trust. The complaint was dismissed, and plaintiff appeals.

Argued before DWIGHT, P. J., and CORLETT, J.

*John R. Strang,* for appellant. *J. B. Adams,* for respondents.

CORLETT, J. On the 25th day of December, 1873, James Cooley, of York, Livingston county, was the owner of a farm of 136 acres; also some personal property. He was about the age of 70 years, without children or descendants. His heirs and next of kin were Susan E. Cooley and Lucy M. Grey, his sisters, who were of full age, living in the town of York. Lucy is still living, but Susan died intestate and unmarried in 1878, leaving no descendants. Amelia Bloodgood was a sister of James Cooley. She died intestate many years ago, leaving Seth C. Bloodgood, her son, and only child. The original plaintiff, George M. Bloodgood, and the defendant Dwight B. Bloodgood, are the only children of Seth C. Bloodgood, who, since the death of James Cooley, conveyed all his interest in the deceased's property to the said plaintiff, George M. Bloodgood, and the defendant Dwight B. Bloodgood, who now claim to own the same, and are of the age of 21 years and upwards. Chauncey Cooley was a brother of James, and died many years ago, leaving, him surviving, two children, the defendants Frederick H. Cooley and Seth J. Cooley, who are still living. The defendants Herbert H. Cooley, Frederick A. Cooley, and James T. Cooley are the children of Frederick H. Cooley. Herbert H. Cooley attained the age of 21 years before May, 1881, when this action was commenced. Frederick A. Cooley was, at that time, of the age of 20 years, and James T. Cooley, 18 years. Margaret C. Cooley is the wife of Frederick H. Cooley. The plaintiff, George M. Bloodgood, and the defendants Herbert H. Cooley, Frederick A. Cooley, James T. Cooley, and Dwight B. Bloodgood were, severally, grand-nephews of James Cooley, deceased. On the 25th day of December, 1873, above mentioned, James Cooley, the deceased, executed a deed of the premises above mentioned to Frederick H. Cooley, his heirs and assigns, for the consideration, as therein stated, of $800. This deed was recorded in the Livingston county clerk's office on the 14th day of July, 1874, in liber 94 of deeds, at page 563. The grantee, to secure the purchase money, executed a mortgage on the premises for $800, with a bond payable at the decease of James to his executors, administrators, or assigns, with annual interest, dated December 25, 1873, and acknowledged January 2, 1874. This mortgage was never recorded, and, at the time of its execution, Frederick H. Cooley delivered to James Cooley a writing, binding himself to furnish and provide for James, and for Susan E. Cooley, his sister, at all times, a comfortable home in the family of Frederick H. Cooley. James also executed to Frederick a bill of sale of his household furniture, farming implements, and his other personal property. Frederick performed all the conditions of his agreement until the death of Susan E. Cooley, in the year 1878, and James Cooley, in March, 1881. In March, 1876, James Cooley wished to have one Archibald Kennedy draw his will, making provision for his said grand-nephews in case they should do as he wished. Kennedy was a neighbor of James, but not a lawyer. Afterwards, a bond was prepared by Kennedy, together with a mortgage on said premises, to secure the payment by Frederick H. Cooley to James Cooley, his attorneys, executors, administrators, or as-

signs, of the sum of $1,600, with interest to be paid annually on the 25th day of December in each year during the life-time of James, and, at his death, the principal sum of $1,600, with accumulations, to be paid to his grand-nephews, share and share alike.    No consideration passed between these grand-nephews and James Cooley for the bond and mortgage.    They were dated on the 25th day of December, 1873, acknowledged March 27, 1876, and recorded in the said Livingston county clerk's office on the 5th day of May, 1876.    On the 18th day of October, 1876, Frederick H. Cooley delivered to James Cooley two promissory notes dated on that day, one for $420, executed by Frederick and Harlan P. Warren, and one for $276, executed by Frederick alone, both of which notes were made payable to James on the 15th day of November, 1876, with interest.    Such notes were given in payment of the moneys intended to be secured by the bond and mortgage for the benefit of the said grand-nephews. James Cooley thereupon executed and delivered to said Frederick H. Cooley a satisfaction and discharge of the $1,600 bond and mortgage, which was recorded in the Livingston county clerk's office.    James always remained in the possession of the mortgage until the same was discharged, when it was delivered to Frederick H. Cooley.    The mortgage was taken by James as a provision for the grand-nephews, in the nature of a will, in the belief that the same might be discharged or changed as he, James, thereafter desired.    James had no intention to create a trust for the benefit of his grand-nephews, or either of them, or make any provision which he could not, during his lifetime, change or revoke.    The original plaintiff, George M. Bloodgood, died before the action was tried, and the present plaintiff, Otto Kelsey, was substituted in his place.    A trial was had at an equity special term, in June, 1888. At the close of the proofs, the complaint was dismissed, judgment was entered for the defendants, and the plaintiff appealed to this court.

The facts above stated were found by the trial court.    The plaintiff's contention is that a valid trust was created, by the deed and $1,600 mortgage, for the benefit of his said grand-nephews, which could not afterwards be revoked, and that, as against them, the discharge of the mortgage was a nullity. The claim on the part of the respondents is that there was no trust, and that James did not divest himself of either title or possession so long as he lived, and that he could revoke or alter the terms of the mortgage at will.    The trial court found in favor of the defendants' position.    The evidence shows with reasonable certainty that Kennedy drew the $800 mortgage, also the $1,600 mortgage; that James Cooley was a frequent visitor of Kennedy for the purpose of consulting him in reference to the final disposition of his property, and the making of a will; that when the farm was deeded to Frederick and the $800 mortgage taken, James executed a bill of sale of all his personal property, and took a written agreement to provide for himself and sister. The $800 mortgage was never put upon record, nor does it distinctly appear, except by evidence, the admissibility of which is questioned, what was done with it; still there can be no room for controversy as to what the mortgage was executed for, and its purposes.    The natural assumption is that it was used as intended until the new arrangement was made.    The $1,600 mortgage was dated on the same day as the deed, but it was not acknowledged until the 27th day of March, 1876, or recorded until the 5th day of May, of that year.    As Kennedy drew it, and the rest of the papers, it is reasonably certain that it was not in fact written until the date of its acknowledgment, but was dated back.    In other words, at the time of the acknowledgment it was dated back to correspond with the deed, and take the place of the $800 mortgage.    The evidence shows that Cooley saw Kennedy early in March, 1876, about his will, instead of drawing which he wrote the $1,600 mortgage, and dated it back, as above stated.    After that a new plan was adopted, and on the 28th day of October, 1876, two promissory notes, one for $420, and the other for $276, payable on the 15th of November of the

same year, were executed and delivered to James, and the $1,600 mortgage was discharged. It thus appears that, when the farm was sold, the $800 mortgage was taken, including the agreement for support; after that, the $1,600 mortgage was taken, which always remained in the possession of James; and, still later, a new arrangement was made, and the $1,600 mortgage canceled. The case shows that the $1,600 mortgage was executed "for the purpose of settling his estate, and making distribution thereof among such of his relatives as he desired should share the same, before his own decease;" that he "duly executed, acknowledged, and delivered various deeds and instruments, in writing, whereby his property was amicably divided and distributed among such of his said relatives as he desired should share the same." This alleged purpose shows that he intended, after his death, that his grand-nephews should receive certain portions of his property, but it never occurred to him that he was creating a present interest or trust in their favor which would prevent him from exercising dominion over it, or changing his mind during his life-time. His subsequent discharge of the mortgage shows that such were his views. The evidence does not show that he was imposed upon or overreached when he executed the discharge. The form of the $800 mortgage discloses the same purpose on the part of James, for the principal was made payable to his executors, administrators, or assigns. The trial court was therefore correct in holding that the $1,600 mortgage in favor of his grand-nephews was executory, and in the nature of a will; that he had power to change it in his life-time; and that he had no intention to create a trust in their favor. The conclusions of the trial court were the logical result of the findings of fact. *McPherson* v. *Rollins*, 107 N. Y. 316, 14 N. E. Rep. 411, was based upon *Martin* v. *Funk*, 75 N. Y. 134, where it was held that, "to constitute a valid gift, the transfer must be consummated, and not remain incomplete, or rest in mere intention. This is so, whether the gift is by delivery only, or by the creation of a trust in a third person, or in the donor; enough must be done to pass the title." In the *McPherson Case*, as well as in the one upon which that decision was based, the transaction was complete. But in the case at bar, no notice was given to the grand-nephews. The mortgage remained in the possession of James, and it was never intended by him that it should pass out of his reach, or beyond his control.

But it is insisted on the part of the learned counsel for the appellant that the trial court fell into errors in admitting incompetent evidence under section 829 of the Code of Civil Procedure; but the testimony to which exception was taken, even if incompetent, would not change the result. The evidence outside of that objection abundantly sustains the findings of the trial court, and this action being in equity, there can be no reversal because of errors which would not have changed the result. *King* v. *Whaley*, 59 Barb. 71; *In re New York Cent. & H. R. R. Co.,* 90 N. Y. 342. But the witness, although a party, was not examined in her own behalf, nor was she interested in the subject upon which she testified. She was therefore competent. *Society* v. *Loveridge,* 70 N. Y. 387; *Loder* v. *Whelpley,* 111 N. Y. 239-245, 18 N. E. Rep. 874; *Allis* v. *Stafford,* 14 Hun, 418. The judgment must be affirmed.