Merrimack, ⎱
June, 1898. ⎰

### FELLOWS & a. v. FELLOWS.

### HOWE, *Adm'r*, & a. v. FELLOWS, *Adm'r*, & a.

A conveyance of land by A to B, in consideration of a bond from B conditioned for the support of A during life and the payment of a sum of money to C after the decease of A, secured by mortgage of the premises conveyed, does not create an irrevocable trust so that A cannot afterward release B from the payment unless such trust was in fact intended.

The acceptance of such bond and mortgage as consideration for such conveyance is not sufficient of itself to establish the creation of such a trust.

Interest paid upon a mortgage debt by a married woman to protect her homestead right in her husband's life estate will, upon a bill to redeem against her by the owners of the remainder after his death, be apportioned between the parties according to the relative value of the estate of each.

IN EQUITY. The first suit is a bill praying that a certain mortgage, dated April 2, 1883, securing a note for $1,000 payable on demand, with interest annually, to Horace Childs, be declared null and void, and alleging a tender of the amount due. The second suit is a bill to foreclose a mortgage of the same premises, dated March 31, 1870, running from James Fellows to Stevens Fellows.

The following findings of fact were made : The plaintiffs in the first suit are grandchildren of Stevens and Miriam Fellows and children of James and Jane Fellows. March 31, 1870, the children of Stevens and Miriam were James, Susan Hardy (now Susan Harris), and Betsey Scribner. On that day Stevens and Miriam conveyed to James real and personal property exceeding $4,000 in value, and at the same time James executed and deliv-

ered to Stevens a bond for the support of himself and wife, and to " pay as soon as convenient after their decease to Susan Hardy, or her heirs, the sum of two hundred dollars, and to Betsey Scribner, or her heirs, the sum of four hundred dollars," the bond being secured by a mortgage of the Foster farm, so called, in Henniker (the land conveyed by Stevens), duly executed by James and Jane. The bond and mortgage were recorded in Merrimack County Registry, June 18, 1870; and early in 1871, Susan and Betsey were informed by their father of the provision which he had made for them. August 18, 1873, James conveyed the Foster farm to Henry Fellows, who on the same day conveyed it to Jane, in whom the title remained until her decease. Miriam Fellows died October 18, 1871; Stevens Fellows, November 9, 1880; Jane Fellows, July 8, 1885; James Fellows, June 22, 1894. Jane Fellows left a will, executed in 1885, giving to her husband " all my real estate, situate in Henniker aforesaid, and also all of my personal property of which I die seized, to have and to hold for his sole use and benefit during his life, and at his decease the said real estate and personal property shall be divided, or so much as may remain thereof, among our children or heirs, as he may direct." James died intestate. He married Amelia M., August 22, 1886.

April 2, 1883, Jane and James executed to Horace Childs a mortgage of the Foster farm to secure their note of even date for $1,000, payable on demand, with interest annually. This mortgage is now held and owned by Amelia, to whom it was assigned by Childs, March 13, 1895, in consideration of the payment by her to him of $1,060. James being unable to pay the interest on the mortgage note as it became due, Amelia paid it from her own funds for the years 1891, 1892, 1893, 1894,— in all, $240. She also lent James $44 in 1890, to repay money borrowed of a third party to pay the interest due on the note in April of that year. As the owner of the Childs mortgage, she claims to recover under it the sum last named and the aforesaid interest payments; and the question of her right to do so is reserved. Before Amelia married James he represented to her, and she believed, that he owned the Foster farm free from incumbrance, and she entertained such belief at the time of their intermarriage. She was first informed of the existence of the Childs mortgage some time during the following year by James, who gave her to understand that it would be necessary for her protection that the mortgage should be taken care of by her; and in the same year she had knowledge that the only interest James had in the farm was a life tenancy therein.

The plaintiffs in the first suit claimed, upon facts not material to the decision, to have made a valid tender, May 4, 1895, of $1,070 as the amount due on the Childs mortgage, and April 6, 1896, $1,120.83 was paid into court.

During the last five or six years of his life James Fellows was in straitened circumstances and also able to earn but little; and at his request, Amelia furnished money for his maintenance to the amount of $163, exclusive of the interest paid on the Childs mortgage, upon his representation that it would be a lien upon the farm. She now claims it to be such under the clause in Jane's will before referred to and quoted. This question is reserved.

The paper purporting to be a discharge of so much of the bond and mortgage as relates to Susan and Betsey reads as follows:

"I, Stevens Fellows, of Hubbardston, county of Worcester, and commonwealth of Massachusetts, for and in consideration of reasons satisfactory to myself, do hereby discharge James Fellows, my son, from performing certain obligations contained in a bond so far as they relate to the payment of any money or legacies to Susan Hardy or Betsey Scribner. Said bond is dated March 31, 1870, and recorded in Merrimack County Records, *lib.* 192, *fol.* 491. I also discharge a certain mortgage deed, of the same date as the above named bond, recorded in said Merrimack Records, *lib.* 200, *fol.* 298, so far as it relates to or may be required to secure the payment of said legacies, freeing the said James Fellows and fully discharging him from all the conditions of said bond, excepting so far as they relate to the maintenance of myself and my wife and expenses of burial and the erection of monuments.

"STEVENS FELLOWS.   [Seal.]

"Signed, sealed, and delivered in presence of—
    "GEO. W. DAVIS.
    "WILLIAM BENNETT.

"COMMONWEALTH OF MASSACHUSETTS, WORCESTER ss.

"Personally appearing before me, the said Stevens Fellows acknowledged the foregoing instrument to be his free act and deed.
    "Hubbardston, June 17, 1877.

"WILLIAM BENNETT, Justice of the Peace."

This paper was recorded in Merrimack County Registry, November 12, 1884. The signatures of Stevens Fellows and Geo. W. Davis are found to be genuine, and those of William Bennett not to be genuine. June 17, 1877, came on Sunday, but it is found that the paper was executed on a week day and misdated. The question of the validity of the paper as against Susan and Betsey is reserved. So far as the decision of this question is dependent upon the intention and understanding of Stevens Fellows as a matter of fact, it is found that it was not his intention to create an executed and irrevocable trust in favor of Susan and Betsey by the provisions of the bond relating to them, or to confer upon them any rights to the sums named in

the bond which could not be revoked by him at any time during his life, and that his understanding accords with his intention. This finding as to Stevens Fellows' intention and understanding is made upon the fact of the discharge of June 17, 1877, in connection with the testimony of three of the Fellows heirs and of G. W. Davis, introduced subject to exception, that he stated to them prior to the release and several years after the making of the bond and mortgage, and on various occasions, that it was his intention to discharge the bond so far as it related to Susan and Betsey, and release James from the payment to them of the sums therein named.

In March, 1895, Amelia purchased of Susan and Betsey their claims, and took an assignment thereof to herself. The amount paid Susan was $50, and Betsey, $100. There was, in addition, a verbal agreement on the part of Amelia to pay them the balance of the claims when collected, less the expense of collection. Neither Susan nor Betsey had any knowledge of the alleged discharge until after they sent their claims to New Hampshire for collection in August, 1894, and neither has ever consented thereto. Upon these claims James Fellows made a payment to Betsey of $29.90, February 26, 1884; and to Susan of $10, January 10, 1882, and of $50, July 18, 1883. Soon after their father's death they called upon James for payment by letter, and continued to do so up to 1885. From time to time he promised to pay them and never refused to do so, and in 1881, 1882, and 1883 he stated to others of his creditors that the mortgage on the farm secured to his two sisters $600, which was a valid claim and lien thereon. Susan and Betsey used no other means than letters to enforce payment. It is found as matter of fact that their claims are not barred by laches through failure to resort to legal proceedings for their collection during the lifetime of James.

Amelia was in possession and took the income and profits of the Foster farm in 1895 and 1896. The fair rental value for those years was $250, or $125 per annum.

The two suits were tried together. Subject to the exception of Howe, administrator of Stevens Fellows, the plaintiffs in the first suit were allowed to testify generally. It is found that Stevens left no estate, that Howe is a nominal party merely, and that Amelia M. Fellows is the real party.

*Sargent, Hollis & Niles* and *William H. Sawyer*, for the plaintiffs in the first and the defendants in the second case.

*Albin, Martin & Howe*, for the defendant in the first and the plaintiffs in the second case.

PARSONS, J. March 31, 1870, Stevens Fellows and wife conveyed to James Fellows, their son, real and personal property

exceeding $4,000 in value, and James executed and delivered to Stevens a bond for the support of Stevens and wife and to "pay as soon as convenient after their decease" to Susan Hardy and Betsey Scribner, or their heirs, the sum of $600. Susan and Betsey, the remaining children of Stevens, were informed of this provision. This bond was secured by a real estate mortgage from James and wife to Stevens. Stevens and wife are both dead, and the material question in the case is whether a release of the condition of James' bond by which he covenanted to pay the $600 to Betsey and Susan, given James by Stevens in June, 1877, is valid and effectual against the claim for that sum now made by the assignee of Betsey and Susan.

The only ground urged against the validity of Stevens' release is that by the transaction of March, 1870, a trust was created irrevocable by Stevens. If a trust is perfectly created and nothing is required of the court but to give effect to the trust as an executed trust, it will be carried into effect, though without consideration. If the settlor, by a clear and explicit declaration duly executed and intended to be final and binding upon him, makes himself a trustee, courts of equity will enforce the trust. If the donor or settlor does not propose to make himself a trustee, the trust is not perfectly created. So an intention merely to make a testamentary disposition cannot be carried into effect unless the instrument evidencing the same is capable of proof as a will. 1 Per. Tr., ss. 96–98. Where the trust is clearly proved, the results which follow therefrom are beyond question. But whether in a particular case the intention of the settlor is established, and whether he has effectuated that intention by parting with all control and dominion over the subject of the trust,— that is, whether the trust is perfectly created,— are often questions of great difficulty. Whether the trust is perfectly created or not is a question of fact in each case. 1 Per. Tr., s. 99. These questions have most frequently in recent times arisen in connection with deposits in banks in the name of the depositor as trustee for another, or in the name of another directly. This case is determined by the adjudications in this court in that class of cases. In determining the relations between James and Stevens and Betsey and Susan, the whole transaction must be taken together. Considering only the bond given by James with the mortgage, if the same were without consideration it might properly be said that James was the creator of a voluntary trust, perfectly created, which he could not revoke, and which Stevens, as the holder of the legal title, a mere naked trustee, could not release. *Jones* v. *Jones*, 66 N. H. 198. The mortgage is the only portion of the transaction considered in *McPherson* v. *Rollins*, 107 N. Y. 316, which is cited as a case exactly in point. But James' mortgage and bond were

upon a valuable consideration moving from Stevens, and he was in no sense the creator of a trust, except as every mortgagor by the giving of a mortgage creates a trust in the security bound for the performance of the condition. He can no more be regarded as the creator of the trust than a savings bank which receives a deposit in the name of A, in trust for C. The obligations of both rest in contract and they cannot release themselves.

The consideration of James' bond and mortgage was the conveyance of real and personal property to him. Stevens' conveyance to James was absolute and contained no declaration of trust. If it was upon James' agreement to pay $4,000 to Stevens, or $3,400 to Stevens, or to support him for life and pay $600 to Betsey and Susan, no trust attached to the land upon failure of James to perform his agreement. G. S., c. 121, s. 13; *Farrington* v. *Barr*, 36 N. H. 86. Whether a portion of the property was a gift to James or not is immaterial. The agreement to support and to pay $600 was the consideration to which both parties assented. The parties understood at the time that the agreement to support was not a sufficient consideration. Stevens required and James agreed to pay a further consideration of $600, payable at the termination of the agreement to support and after its fulfillment. If the matter rested here, Stevens could at any time, upon terms satisfactory to himself, have released James from the payment. The question is, whether by accepting from James, as part of the consideration, his covenant to pay Betsey and Susan $600, in place of a note or agreement payable to himself, Stevens deprived himself of all power and dominion over the $600 so that he could not afterward appropriate it to his own uses. What the reasons were, satisfactory to him, for which he executed the release to James are immaterial. If he could release him upon payment to him of the $600 or its present worth, he could for a less sum. Having received the amount, he could give it to James, or could make him a present of a release.

If the taking of the bond to him was an appropriation of the fund owed by James, in trust for Betsey and Susan, Stevens was both the creator of the trust and the trustee. If James failed to perform according to his mortgage, Stevens upon foreclosure would hold the land. If the acceptance of James' agreement created a valid trust which Stevens could not revoke, then the foreclosure would not revoke it, and the land would stand in Stevens' hands as trustee, charged with the payment of the $600 at his decease; because if neither James nor Stevens could cancel James' agreement to pay that sum, the security appropriated by James for its payment would be held in trust for that purpose, and performance could be enforced by a suit in the

name of Stevens' administrator (*Holmes* v. *Fisher*, 13 N. H. 1; *Northy* v. *Northy*, 45 N. H. 141), or by the appointment of a trustee if necessary. *Perkins* v. *Perkins*, 60 N. H. 373. Did Stevens intend a present gift to Betsey and Susan, or a testamentary disposition of such of his estate as he understood would remain at his decease? In order that the money, whether a deposit in a savings bank or a right to money in the hands of another, should pass as a present gift or trust, it must appear that a gift or trust was intended, and parol evidence is admissible to prove such intent. *Smith* v. *Bank*, 64 N. H. 228; *Marcy* v. *Amazeen*, 61 N. H. 131; *Towle* v. *Wood*, 60 N. H. 434; *Bartlett* v. *Remington*, 59 N. H. 364; *Blasdel* v. *Locke*, 52 N. H. 238. As to what constitutes sufficient evidence of an intention to make a gift or declare a trust, the authorities are not agreed. See 64 N. H. 228, 232; 1 Per. Tr., s. 99. In *Martin* v. *Funk*, 75 N. Y. 134, relied upon in support of *McPherson* v. *Rollins*, 107 N. Y. 316, before cited, it was held that the mere deposit in the name of the depositor in trust for another constituted an effectual trust. In *Beaver* v. *Beaver*, 117 N. Y. 421, in commenting upon *Martin* v. *Funk*, it is said: "The court applied the doctrine that the owner of a fund may, by an unequivocal declaration of trust, impress it with a trust character, and thereby convert his absolute legal title into a title as trustee for the person in whose favor the trust is declared. . . . To constitute a trust, there must be either an explicit declaration of trust, or circumstances which show beyond a reasonable doubt that a trust was intended to be created." In this case it was held that the mere deposit by the father of money in a bank in the name of his son was insufficient alone to establish a trust or a gift. In *Cunningham* v. *Davenport*, 147 N. Y. 43, the plaintiff deposited his own money in a bank in his own name, in trust for his brother. His brother died, and his administrator claimed the money. The depositor denied that he intended to give the money to his brother. The administrator relied upon *Martin* v. *Funk* and cases following it in New York. *Willis* v. *Smyth*, 91 N. Y. 297; *Mabie* v. *Bailey*, 95 N. Y. 206. In *Cunningham* v. *Davenport*, the court say: "The doctrine laid down by this court in the previous cases amounts to this, that the act of a depositor in opening an account in a savings bank in trust for a third party, the depositor retaining possession of the bank-book and failing to notify the beneficiary, creates a trust if the depositor dies before the beneficiary, leaving the trust account open and unexplained." As thus modified, *Martin* v. *Funk* does not seem to us an authority for the proposition to which it is cited in *McPherson* v. *Rollins*. In *Cunningham* v. *Davenport* it was held that no trust was created, as none was intended,— a fact which appears to be found on the plaintiff's statement of his intention.

In *Kelsey* v. *Cooley*, 11 N. Y. Supp. 745, it appearing that property was conveyed and a mortgage taken conditioned for the payment of certain sums after the death of the mortgagee, for the purpose of making a testamentary disposition of the estate, the subsequent discharge of the mortgage by the mortgagee was upheld. The court say: "The alleged purpose shows that he intended that his grandnephews, after his death, should receive certain portions of his property, but it never occurred to him that he was creating a present interest or trust in their favor which would prevent him from exercising dominion over it, or changing his mind during his lifetime. His subsequent discharge of the mortgage shows that such were his views. See *Jones* v. *Lock*, L. R. 1 Ch. 25."

In the present case there was no express declaration of trust; the legal title to the mortgage and the bond remained in Stevens. He retained the dominion and control over the property. For failure by James to perform his covenant to support, Stevens could have foreclosed and taken possession. If the trust had been established which Stevens could not revoke, the result would then be that Stevens would hold the land charged with a trust for the payment of $600 to Betsey and Susan. But the main object of the transaction, as disclosed, was to provide for Stevens and wife during life and to dispose of the remnant of his property at his decease. It cannot be inferred that Stevens' intent was to deprive himself of the use of a portion of his property for his support if the default of James or other reasons required him to use it. At least, a provision that this remnant should be paid to Susan and Betsey when he had no further use for it is not sufficient evidence to establish such an intent. The trust claimed cannot be established on the evidence. It was a mere testamentary provision.

The case of *Barber* v. *Thompson*, 49 Vt. 213, is distinguishable in that the payment was not contingent upon the death of the mortgagees, but was to be made within six months of the date of the transaction, and the proceedings were in no sense testamentary. The court find in the case an intent to make an irrevocable gift. *Barber* v. *Thompson* was followed in *Sargent* v. *Baldwin*, 60 Vt. 26, under circumstances more nearly resembling the present. The court recognize the fact that the original grantor would regain his title in case the mortgagor failed to fulfill the contract for support, upon which the one for payment is necessarily dependent, but do not consider whether the dominion and control thereby retained over the property by the creator of the trust affect its creation.

The cases which hold that the conveyance of property in consideration of an agreement to support and for the payment of money to a third person constitutes a trust irrevocable by the

original grantor, lose sight of the fact that a trust cannot be created unless such is intended, and confuse the trust imposed in every case upon security mortgaged — that it be applied to the performance of the condition for which it is held, a trust upon consideration which is irrevocable by the mortgagor — with the trust supposed to be voluntarily created by the original grantor, by the terms of the bond or agreement accepted by him as a consideration for his conveyance. So far as the question of the right of discharge by the mortgagee or obligee is concerned, the taking of the mortgage is evidence that a right of revocation is retained. Had Stevens had an intention to create an irrevocable trust in the land for Betsey and Susan, he could have expressed that intention by an express declaration of trust in himself, or by requiring of James a declaration that he held the lands in trust for the support of Stevens and wife and the payment to Betsey and Susan. In this case, if James failed to perform the trust, Stevens' only remedy would have been through proceedings in equity to secure the application of the trust property to the purposes of the trust, and James would have had no liability beyond the trust property. But Stevens preferred to take James' agreement in place of a declaration of trust,— an agreement which he could enforce at law by suit on the bond or foreclosure on the property. In place of an instrument declaring absolutely an intention to create an irrevocable trust, he took one which does not clearly declare such an intention, and in the absence of evidence and a finding that such was his intention, it cannot be held an irrevocable trust was intended. Stevens might have taken a note from James, payable to Betsey and Susan at his death, and delivered it to them, from which evidence a present gift could be found; but that he adopted none of these courses to produce the result claimed, is not evidence that he intended such a result.

The case is exactly as if he had deposited $600 in a savings bank in his own name, payable upon his death to Betsey and Susan, retaining the book with the right, in case an agreed annual interest was not paid him, to withdraw the money. Upon the New Hampshire cases cited, the money would not pass to Betsey and Susan as a gift or trust without a finding that such was intended. The law is not different because the deposit was land and chattels instead of cash, with an individual rather than a bank, or because Stevens' right to reclaim was dependent upon James' performance of an agreement to furnish support rather than to pay interest.

So far as the cases in Vermont are in conflict with these views, we are unable to follow them.

The evidence of Stevens' declarations that he intended to discharge the bond so far as it related to Susan and Betsey was

competent on the question whether he did execute the discharge, which was one of the questions at the trial. *Wiggin* v. *Scammon*, 27 N. H. 360, 365. Whether these declarations and the fact of the discharge are competent on the question of Stevens' intention, it is not necessary to consider. See *Smith* v. *Bank*, 64 N. H. 228; *Cunningham* v. *Davenport*, 147 N. Y. 43; *Kelsey* v. *Cooley*, 11 N. Y. Supp. 745.

The plaintiffs in the first case claim to have made a valid tender to the defendant Amelia Fellows, May 5, 1895, of the amount due upon the Childs mortgage, and April 6, 1896, paid into court $1,120.83.

It is not necessary to consider whether the facts found would otherwise constitute a legal tender, because the amount tendered was clearly insufficient. Amelia paid in the years 1891 to 1894, as interest on this mortgage, $240, and March 13, 1895, paid principal and interest, $1,060, making the sum of her payments, without interest, $1,300. If she had not made the interest payments as due, this sum at least would have been due upon the mortgage at the time of the tender, and to obtain the discharge from Childs, if Amelia had not interfered, the plaintiffs would have been obliged to pay that sum. To obtain the discharge of the mortgage in Amelia's hands, the plaintiffs must pay the same sum, unless in making interest payments Amelia was discharging a duty she owed. But she was not the tenant of the life estate. She had an interest in the life estate to the extent of her homestead right in her husband's estate, which she had the right to protect. But she was under no obligation to keep down the incumbrances upon the balance of the estate, or to contribute thereto except in the proportion of the value of her interest to the balance of the estate charged with that duty. As upon any view that can be taken of this question the amount tendered was insufficient, the necessary result is the dismissal of the bill as brought. But as the plaintiffs have secured the allowance of an amendment making the proceeding a bill to redeem from the Childs mortgage, the question is, what sum must be paid for that purpose. This sum is the sum of the payments made by Amelia on account of the mortgage, less the sum which her interest in the estate required her to contribute for its protection. How much of the interest paid by her was in fact for the protection of the estate of the remainder-men, and how much for the protection of her own estate, cannot be determined upon the facts found. It depends upon the relative value of her homestead of $500 in her husband's estate to the whole estate of the remainder-men. She is bound to contribute her proportionate share. That proportion is not found in the case and can be determined at the trial term. The $44 loaned James was not paid to protect the estate from the mortgage, but to

enable James to discharge a debt incurred by him in the per-
formance of his duty as life tenant, and cannot be recovered by
Amelia as part of the mortgage debt. Neither would James'
representation, that the $163 furnished by Amelia for his main-
tenance would be a lien upon the farm, authorize its addition
to the amount of the Childs mortgage; or entitle her to hold
the farm until it was paid, under any view that can be taken of
James' title under Jane's will. The exception to the admission
of the plaintiffs in the first suit to testify generally cannot be
sustained. *Chase* v. *Chase*, 66 N. H. 588, 592.

The second suit is dismissed. The amount due on the Childs
mortgage will be determined upon the facts already found and
such additional hearing at the trial term as may be necessary
upon the relative value of Amelia's homestead interest in James'
life estate.

*Case discharged.*

BLODGETT and CHASE, JJ., did not sit : the others concurred.